**In the Matter of the Determination of the Unemployment Insurance Liability of BALHORN–MOYLE PETROLEUM COMPANY.**

**No. 13385.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 19, 1981.

Decided Feb. 3, 1982.

---

Drew C. Johnson, Sp. Asst. Atty. Gen., Aberdeen, for appellant South Dakota Dept. of Labor, Unemployment Ins. Division.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for appellee Balhorn-Moyle Petroleum Co.

HENDERSON, Justice.

### ACTION

The Unemployment Insurance Division of the South Dakota Department of Labor (Department) appeals from the judgment of the trial court which held that the relationship between Balhorn-Moyle Petroleum Company (Company) and Stuart Hemenway was that of a supplier and distributor. By its judgment, the trial court reversed the administrative decision of the Secretary of Labor who ruled that this relationship was that of an employer-employee. Under the Secretary of Labor's decision, the Company would be liable for unemployment insurance taxes on Hemenway. We affirm the trial court's judgment.

### FACTS

Effective January 1, 1980, Hemenway and the Company entered into a twelve-month written agreement whereby Hemenway received gasoline provided by the Company and sold it at a Sturgis, South Dakota, service station. This station was owned by the Company.

The terms of this agreement required Hemenway to operate the service station full-time, but the hours of operation were

to be determined solely by him. Nothing in the agreement prohibited Hemenway from hiring and paying his own employees to assist him in conducting business at the station. His wife worked with him. The agreement also provided that Hemenway pay all utility and telephone bills. Hemenway could carry on other service station related business activities as he decided, for which he would bear total financial responsibility. In this regard, Hemenway kept his own records for automotive repairs and related services performed at the station, and had his own state sales tax license whereby he collected and remitted sales tax to the state. He owned the inventory. Hemenway also paid for his own advertising and could purchase gasoline from other suppliers. The language found in the agreement specifically refers to the "respective businesses" of Hemenway and the Company. Hemenway conducted an active automobile repair business. Either party could terminate the agreement, for any reason, by giving written notice to the other party at least thirty days prior to the agreement's expiration.

## ISSUE

Did the Secretary of Labor err by ruling that an employer-employee relationship existed between the Company and Stuart Hemenway? We hold that it did.

## DECISION

■ In an appeal of this nature, we review the record of the administrative agency in the same manner as the trial court, unaided by any presumption that its decision is correct. *Matter of South Lincoln Rural Water System Application for Permit No. 4300–3*, 295 N.W.2d 743 (S.D.1980); *South Dakota Public Utilities Commission v. Otter Tail Power Company*, 291 N.W.2d 291 (S.D.1980). This Court is cognizant that great weight should be given to the findings made and the inferences drawn by the agency on questions of fact. SDCL 1–26–36. Further, the court may not substitute its judgment for that of the agency as to the weight of the evidence on the

question of fact unless the agency's decision is affected by error of law or is clearly erroneous in light of the evidence in the entire record. We find no errors of law but hold that the Secretary of Labor's decision is clearly erroneous under the evidence in this record. SDCL 1–26–36(5); *Matter of Clay-Union Electric Corporation*, 300 N.W.2d 58 (S.D.1980).

The agreement between Hemenway and the Company specifically provided:

The parties to this Agreement intend that the relationship between them created by this Agreement is that of independent contractor-supplier. Neither Operator [Hemenway] nor any agent, employee or servant of Operator shall be or shall be deemed to be an employee, agent or servant of supplier [the Company]. Supplier is interested only in the results obtained under this Agreement, and the manner and means of conducting the operation of the service station is under the sole control of Operator.

It is the Department's position that, when this agreement is juxtaposed against the provisions of SDCL 61–1–11, the relationship between the Company and Hemenway constitutes that of an employer-employee. The Secretary of Labor so found. We do not agree.

■ A conjunctive test is provided for in SDCL 61–1–11 (emphasis added):

*Services performed by an individual for wages* shall be deemed to be employment subject to this title unless and until it is shown to the satisfaction of the department that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

As indicated by the emphasized verbiage of SDCL 61–1–11, however, before the three subsections of this statute are addressed, it must first be shown that the alleged employee performs services for wages. *Sarah Coventry, Inc. v. Caldwell*, 243 Ga. 429, 254 S.E.2d 375 (1979). Several facts indicate that this is not the situation in the instant case.

Our Legislature has defined "wages" as "all remuneration paid for services, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash[.]" SDCL 61–1–1(9). The statute clearly uses the word "paid." Here, the Company paid no wages to Hemenway for services; only gasoline was supplied. Hemenway was obligated to totally reimburse the Company for any gasoline dispensed, excepting for three and one-half cents per each gallon sold. This reimbursement occurred between the Company and Hemenway on a daily basis. Hemenway was not listed on any of the Company's payroll records nor were any social security taxes paid by Hemenway within the context of this agreement.

 We believe that the evidence clearly shows that the Company did not pay wages to Hemenway. Rather, all indications are to the effect that the relationship between Hemenway and the Company was that of supplier and distributor, with Hemenway retaining a certain amount of the monies received from his sale of the gasoline. It is true that the agreement speaks in terms of "commission," and that the language of SDCL 61–1–1(9) states that wages are "remuneration[s] paid for services, including commissions[.]" The term "commissions," however, modifies the phrase "remunerations paid for services" and, hence, does not ipso facto transform every commission into wages. *See* SDCL 2–14–1. Persons earning money within the realm of self-employment, such as Hemenway, have withdrawn themselves from the labor market and their earnings cannot be construed as wages. Therefore, although the agreement uses the term "commission," Hemenway's earnings, which flow from self-employment, cannot be wages under SDCL 61–1–1(9). *See Micca v. Administrator, Unemployment Compensation Act*, 26 Conn. Supp. 16, 209 A.2d 682 (1965); *Mississippi Employment Security Commission v. Medlin*, 252 Miss. 146, 171 So.2d 496 (1965).

For the foregoing reasons, we hold that the ruling by the Department of Labor is clearly erroneous in that the relationship between the Company and Hemenway was not that of an employer-employee since, under SDCL 61–1–1(9), no wages were paid by the Company to Hemenway.

We affirm the judgment of the trial court.

WOLLMAN, C. J., and MORGAN, J., concur.

DUNN and FOSHEIM, JJ., dissent.

DUNN, Justice (dissenting).

I join Justice Fosheim's dissent.

SDCL 61–1–1(9) defines wages as "all remuneration paid for services, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash . . . ." Hemenway received 3½ cents per gallon for each gallon of gasoline sold from his station. The 3½ cents was remuneration for the services he provided for Balhorn-Moyle including working at the station full-time, collecting payment from the customers, and making a daily accounting to Balhorn-Moyle.

The majority opinion also alleges that the word "commission" as used in the statute modifies the phrase remuneration for services. This is not correct. Rather, the terms "commissions and bonuses and the cash value of all remuneration paid in any medium other than cash" are specific examples of "remuneration paid for services." Even Balhorn-Moyle agrees that a commission is involved here, and thus the 3½ cent remuneration qualifies as a wage.

As Justice Fosheim's dissent indicates, Hemenway is under considerable control and direction from Balhorn-Moyle, therefore the Hemenway/Balhorn-Moyle relationship would not meet the SDCL 61–1–11 three-part test.

FOSHEIM, Justice (dissenting).

The majority opinion never gets to the three-part test of SDCL 61–1–11 because the decision stops at the first line of the statute and decides that the 3½ cents per gallon commission Hemenway is paid by the Company is not wages within the meaning of SDCL 61–1–1(9). In 1980 that statute read:

> Effective January 1, 1947, "wages" means all remuneration paid for services, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash, but excluding remuneration described by §§ 61–1–32 to 61–1–35, inclusive. Gratuities customarily received by an individual in the course of his employment from persons other than his employer, if such gratuities constitute fifty percent or more of the employee's earnings from such employer shall be treated as wages paid by his employer. The reasonable cash value of remuneration paid in any medium other than cash and the reasonable amount of gratuities shall be estimated and determined in accordance with rules prescribed by the department[.]

In the last paragraph on page 4 of the opinion, the majority refers to the above statute and states: "The term 'commissions,' however, modifies the phrase 'remunerations paid for services' and, hence, does not ipso facto transform every commission into wages." I cannot follow the logic of this sentence. The majority opinion cites SDCL 2–14–1 in support of that sentence. SDCL 2–14–1 states: "Words used [in statutes] are to be understood in their ordinary sense except also that words defined or explained in § 2–14–2 are to be understood as thus defined or explained." Hemenway was paid a commission for services rendered—pumping the Company's gas and supplying the Company with accurate records of the amount of gas pumped and money taken in payment for the gas pumped. Reading the words of SDCL 61–1–1(9) in their ordinary sense I come to the conclusion that the commissions paid Hemenway are automatically wages.

As further support for the statement that commissions are not automatically wages the majority decision cites a Connecticut county court case and a Mississippi Supreme Court case. Neither of those cases is in any way factually similar to the one before us, neither involve the issue of commissions as wages, and neither State has a statute defining wages identical to South Dakota's.

If the 3½ cent commission is a wage, this court will have to decide if the three-part test of SDCL 61–1–11 is met. The franchise agreement between Hemenway and the Company plainly shows that Hemenway is under considerable control and direction from the Company. *See* Agreement, Covenants of Operator, for example. Because of this I don't think the Hemenway/Company relationship would survive SDCL 61–1–11(1).