In the Matter of the Appeal of
**HENDRICKSON'S HEALTH
CARE SERVICE.**

No. 16994.

Supreme Court of South Dakota.

Considered on Briefs Sept. 20, 1990.

Decided Nov. 14, 1990.

Rory M. Barth of Lacey & Barth, Sioux Falls, for appellant.

Drew C. Johnson, Aberdeen, for appellee South Dakota Dept. of Labor.

WUEST, Justice.

Hendrickson's Home Health Care Service (HHCS) appeals an order of the circuit court which affirmed the determination of the South Dakota Department of Labor, Unemployment Insurance Division that HHCS was liable for unemployment insurance contributions. We affirm.

In an administrative appeal, we review the agency record in the same light as

does the trial court. SDCL 1–26–37; *In Matter of Application of Northwestern Bell Telephone Company*, 382 N.W.2d 413, 416 (S.D.1986); *In Matter of Application of Koch Exploration Company*, 387 N.W.2d 530, 536 (S.D.1986) (Fosheim, C.J., dissenting). Deference is accorded an agency's factual determination, and we review the record to determine whether the agency's findings of fact are clearly erroneous in light of all the evidence in the record. SDCL 1–26–36; *Karras v. State, Dept. of Revenue*, 441 N.W.2d 678, 679 (S.D.1989); *Sharp v. Sharp*, 422 N.W.2d 443, 447 (S.D.1988) (Morgan, J., concurring specially; Henderson, J., dissenting); *Permann v. South Dakota Dept. of Labor, Unemployment Insurance Division*, 411 N.W.2d 113, 115–17 (S.D.1987) (Henderson, J., concurring in result). Conclusions of law, however, are given no deference on appeal and are freely reviewable. SDCL 1–26–36; *Karras, supra,* at 679; *Sharp, supra,* at 447; *Permann, supra,* at 115–17. Likewise, mixed law-fact questions which require us to apply a legal standard are reviewed as are questions of law: *de novo. In Matter of Groseth International, Inc.*, 442 N.W.2d 229, 232 (S.D.1989) (Sabers, J., concurring in part and concurring specially in part); *South Dakota Stockgrowers Assn., Inc. v. Holloway*, 438 N.W.2d 561, 563 (S.D.1989); *Permann, supra,* at 119. With these standards of review in mind, we address the factual findings of the unemployment insurance division in this case.

Hendrickson's Home Health Care Services, Inc., is a South Dakota Corporation in the business of providing in-home nursing services. HHCS advertises its services in the newspaper and the telephone directory, and also receives referrals from hospitals, doctors, clinics, and social services. Typically, prospective clients contact HHCS requesting home-care and nursing services and inform HHCS of the level of care required. HHCS maintains a list of nurses and nurse's aides who possess varying degrees of nursing skill. Upon receiving a request for services, HHCS consults the list and contacts those individuals with sufficient skills for a referral. The care provider may accept or reject the referral by HHCS. Care providers are not removed from the list if they merely reject a referral. Once the referral is accepted, the client and the care provider establish the work schedule and the duties to be performed.

HHCS and the client then enter into an agreement which specifies the number of hours of care and the hourly rate the client will pay HHCS for the services of the care provider. HHCS bills the client for these services and collects the fee from the client. Clients are charged $5.00 per hour for unskilled nursing and $7.75 per hour for skilled nursing. Care providers are paid weekly by HHCS and receive $3.90 per hour for unskilled nursing and $6.25 for skilled nursing. The care provider is paid each week regardless of whether the client has paid HHCS. No income tax or social security is deducted from the care providers' checks. The compensation paid to the care providers is reported to the Internal Revenue Service on Form 1099. Although HHCS sets the rate of pay, care providers are free to negotiate a different rate of pay with the client.

HHCS does not guarantee or require any particular number of hours of work, nor does HHCS supervise the care providers day-to-day activities in the client's home. Typically, when a care provider is unable to work a scheduled shift, she informs HHCS and HHCS finds a replacement. Occasionally, a care provider locates her own replacement. In the latter case, HHCS is contacted to insure the replacement is paid and the bill is correct. Although care providers are free to hire their own assistants, there was no evidence that any care provider did so.

Standard forms for charting nurse's notes are provided by HHCS. These forms are filed with HHCS so that the client's doctor or the client's family may review the care provided and the client's condition. Name tags with HHCS's name on them are also furnished by HHCS to the care providers. HHCS furnishes no equipment or training for the care providers. In addition, the care providers pay their own in-

surance and any other expenses associated with the referral.

The care provider and HHCS sign a document entitled, "Subcontractor's Responsibilities," which requires the care provider:

(1) Wear white or blue uniforms unless otherwise instructed.

(2) Not smoke on the job without the client's permission.

(3) Not work extra hours or change hours unless it is cleared with HHCS. The care provider must give HHCS three hours notice if she is unable to work her scheduled shift. A care provider who does not show up for her shift or call in is subject to dismissal.

(4) Chart in nursing notes every shift and sign every entry.

(5) Not give medication if the care provider is a nurse's aide.

(6) Provide her own lunch.

(7) Leave the home cleaner then when she arrived.

(8) Have $4.00 deducted from her first check to pay for a name tag.

(9) Carry her own liability insurance.

(10) Not accept gifts from the client.

(11) Not work for any current or past client of HHCS for ninety days after termination.

(12) Never give out phone numbers of the clients or care providers.

(13) Is subject to dismissal for violating the above suggestions.

Care providers are not restricted by HHCS from engaging in outside employment, including private nursing. One of HHCS's listed care providers, who testified at the administrative hearing, did private nursing on her own for three months prior to starting to work for HHCS in January 1986. Since that time, she has worked exclusively for HHCS, except for seasonal work as a ticket-taker at a race track. Another of HHCS's listed care providers was employed as a nurse's aide in a nursing home for one year and provided nurse's aide services in her own home to an elderly man for four years prior to starting to work through HHCS in 1984. Since that time, she has not sought or accepted nurse's aide work other than the referrals she receives from HHCS. She also has a baby-sitting service three days per week and is able to arrange her nurse's aide work around the baby-sitting hours. Three other of HHCS's listed care providers had outside jobs while working through HHCS. One of them was employed as a nurse's aide somewhere else while she accepted referrals through HHCS. However, no listed care providers advertised or operated a business, independent of the referrals provided by HHCS, in the area of home health care services while accepting referrals through HHCS. Indeed, no evidence was presented to indicate that the care providers hold themselves out to the public as engaged in independent business, advertise their home health care services, have any clientele independent from that provided by HHCS, have any business premises or business cards, have any substantial investment in HHCS, nor have any going business to sell.

The factual findings of the agency are not questioned in this appeal, and having found support for such findings in the record, we cannot say the agency's factual determinations were clearly erroneous. Under the facts presented, the agency concluded as a matter of law that:

(1) The care providers performed services for HHCS for wages, and HHCS therefore has covered employment under the South Dakota Unemployment Insurance Law;

(2) The care providers were not free from control or direction in the performance of their service. HHCS retained the right to direct and control their services;

(3) The care providers were not customarily engaged in an independently established trade, occupation or business; and,

(4) The care providers are employees of HHCS, not independent contractors, and therefore, HHCS is liable for contributions to the unemployment compensation fund.[1]

---

1. The agency also found HHCS liable for any penalties or interests that may be due and ow-

■ HHCS contends they are merely providing referral and billing services to the care providers for which a fee is charged, and that such fee is retained from each client payment. Consequently, the care providers are not HHCS employees, but are independent contractors, and therefore, HHCS is not required to contribute to the state's unemployment insurance fund. We are thus presented with a mixed question of law and fact: "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard[.]" *Permann*, 411 N.W.2d at 118 (*quoting Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n. 19 (1982). As we initially acknowledged, mixed law-fact questions are freely reviewable.

■ SDCL 61–1–11 distinguishes employees and independent contractors for purposes of unemployment insurance tax liability.

> Service performed by an individual for wages is employment subject to this title unless and until it is shown to the satisfaction of the department of labor that:
>
> (1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and
>
> .　.　.　.　.
>
> (3) The individual is customarily engaged in an independently established trade, occupation, profession or business.

SDCL 61–1–11. In applying this test, the burden is upon the agency to show that the alleged employees perform services for wages. *See In Matter of Balhorn–Moyle Petroleum Co.*, 315 N.W.2d 481, 484 (S.D. 1982) (Dunn and Fosheim, J.J., dissenting); *Weber v. South Dakota Dept. of Labor, Unemployment Insurance Division*, 323 N.W.2d 117, 121 (S.D.1982). Once this has been shown, the burden shifts to the employer to prove the employees are independent contractors under the elements of

SDCL 61–1–11. *See Weber, supra* at 120–21; *Carr v. South Dakota Department of Labor, Unemployment Insurance Division*, 355 N.W.2d 10 (S.D.1984). All elements of this test must be shown before the exemption applies. *South Dakota Department of Labor, Unemployment Insurance Division v. Tri State Insurance Co.*, 315 N.W.2d 315, 316 (S.D.1982).

■ "[A]ll remuneration paid for services, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash" is wages for purposes of the unemployment compensation scheme. SDCL 61–1–1(9). It is clear that the care providers perform their services for wages. HHCS pays the care providers weekly, commensurate with the hours of nursing care provided HHCS clients and regardless whether the clients pay HHCS. These pay checks are remuneration paid for services. *Cf. Balhorn–Moyle, supra* (supplier-distributor relationship). It is not defeating that the nursing services were not provided to HHCS in a direct manner. The nursing services further HHCS's ordinary course of business.

■ Having determined that the care providers perform services for wages, we examine the administrative record to determine whether HHCS demonstrated that the care providers are independent contractors under SDCL 61–1–11.

> (1) Whether the individuals have been and will continue to be free from control or direction over the performance of their services, both under contract of service and in fact?

The facts demonstrate that the care providers are required to sign a contract which permits HHCS to control their conduct: care providers are required to wear a certain color uniform and a name-tag with the company's logo embossed on it, making them appear to be agents of HHCS; care providers cannot work extra hours or change their hours of work without clearing it with HHCS; HHCS prohibits care providers from smoking on the job; care providers must chart nursing notes and file

ing on unpaid unemployment insurance contri-　butions.

them centrally with HHCS; and HHCS restricts care providers from employment with current or past HHCS clients for ninety days following termination. Furthermore, violation of any of these conditions is grounds for dismissal. These contract requirements are indicative of the control exercised by an employer over the performance of employee services; thus, HHCS fails the first prong of SDCL 61–1–11. *See Miller Liquid Feeds v. South Dakota Dept. of Labor, Unemployment Insurance Division,* 340 N.W.2d 185 (S.D.1983); *Weber, supra. Cf. Tri State Insulation, supra; Balhorn–Moyle, supra.*

(2) Whether the individuals are customarily engaged in an independently established trade, occupation, profession or business?

The requirement that the employee's occupation be independently established and that he be customarily engaged in it calls for an enterprise created and existing separate and apart from the relationship with the particular employer; an enterprise that will survive the termination of that relationship. *See Princess House, Inc. v. Department of Industry, Labor and Human Relations,* 111 Wis.2d 46, 330 N.W.2d 169, 181 (1983) (Steinmetz, J., concurring). The individual must have a proprietary interest in the enterprise to the extent that she can operate it without hinderance from any other individual. *See Tri State Insulation,* 315 N.W.2d at 316.

In a broad sense, the care providers have a proprietary interest in their nursing skills. *Cf. Tri State Insulation,* 315 N.W.2d at 317–18 (proprietary interest in skills as salesman). However, it is not skill alone which determines whether an individual is established in a trade or business, but whether that individual by reason of such skill engages herself in an economic enterprise such that she bears the risk of her own unemployment. *See Princess House,* 330 N.W.2d at 181. Whether or not she is unemployed is solely a function of market forces and the demand for her skills, not the response of her master to similar economic realities. Here, there was no evidence that the care providers held themselves out to the public as engaged in

an independent business which would exist separate and apart from HHCS; they did not advertise their health care services, they did not have any clientele independent of that provided by HHCS, and they did not have business premises or business cards. Furthermore, the care providers could be dismissed from HHCS for violating the provisions of the "Subcontractor's Responsibilities" document. Thus, it is clear that the care providers were not assuming the risk of unemployment by engaging in an economic enterprise independent of HHCS. They were employed by HHCS and dependent upon it for their livelihood. Consequently, HHCS fails the second prong of SDCL 61–1–11.

We affirm the trial court on all issues.

MILLER, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs in result in part and dissents in part.

HENDERSON, Justice (concurring in result in part; dissenting in part).

Reading is a rather subtle happiness which produces joy that does not seem to be dulled by age. It is somewhat of an unpunishable vice when one reads for recreation. However, it can prove to be a punishing lot for the appellate judge.

I read in this opinion written by Wuest, J., that registered nurses (RN's), licensed practical nurses (LPN) and nurse's aides are "care providers." In fact, they are so denominated, and that phrase appears, 36 times throughout the writing.

I was always of the opinion that nursing was a profession and imbued with a high calling to watch over and care for the ill. I highly respect them, inter alia, for the care they have given to society and members of my family, to include myself. Doctor was often gone but nurse was everpresent. To the Florence Nightingales, I tip my hat. Our State Legislature, expressing the sovereign will, has been fully cognizant of their educational needs and professional standards. SDCL 36–9–1.1. A professional Board of Nursing is established under

SDCL 36-9-7. Sioux Falls, from whence this litigation sprung, is the largest city in our state and I recognize the worth and dedication of these nurses, be they male or female and irrespective of their designation as an RN, LPN or nurse's aide.

Back to reading. One can read so much legal formulae, terms, and phrases pouring from the reservoirs of formal law. I read in the Department of Labor's decision that these people are "workers." The Department refers to them, again and again, as "workers." In the Department of Labor's brief to this Court, they are called "nurses." In appellant's briefing, they are denominated as being nurses and nurse's aides and occasionally referred to as "health care providers." When the appellate reviewer reads the Administrative Law Judge's decision, they are called "employees." Circuit Court Judge Kean termed them "workers." Hendrickson's contract with them called them "independent contractors" to which the nurses, referring to their nurses services, acceded to being called "independent contractors" and also "nurses."

It is my understanding from reading these briefs and the decisions made below, that we are confronted with this question: What is the legal status of these "individuals?" Of the many terms ascribed to them, which term truly identifies their legal status?

It is noted in the majority writing of Wuest, J., that intermittently nurses are referred to as he, she, herself and her. Nurses may be male or female in point of fact and under the law.

These individuals, in my opinion, were nurses and they were receiving wages for their services. They deserve their rightful, professional status. They did not receive the money from the sick people they attended. The money was sent directly to Hendrickson by the sick person. Hendrickson was handling the money and sent the money back to the nurses for their hourly wages, which they earned as a result of providing nursing services. This payment was by the week. Most importantly, Hendrickson established the charge for the nurse's time spent with the sick person. Therefore, this case is clearly distinguishable from *Matter of Balhorn–Moyle Petroleum Co.*, 315 N.W.2d 481 (S.D.1982).

Under SDCL 61-1-11, these individuals were nurses "customarily engaged" in an independently established profession. However, they could not meet the exception that as nurses, they were free from the control or direction of Hendrickson's Health Care Service. In my opinion, the majority opinion has used a term 36 times in order to cleverly supplant that term for the true role of these individuals in our society. Thus, to cast upon them the term of "care provider" seems contrary to our state statutes. This term aligns itself with "Hendrickson's Health Care Service." In a subtle way, this term detracts from their professional status. However, to emphasize that term by repetition—36 times—intertwines and commingles the unifying concept of "Hendrickson's Health Care Service" and "care providers" thereby buttressing the majority holding. These nurses should not be swept up in a generic term.

I dissent to that aspect of this decision which holds that these nurses were not customarily engaged in an independently established occupation or profession. As such, they had the right to subcontract but, under this factual scenario, they were controlled and directed in the performance of their services. Under *Miller Feeds v. South Dakota Dept. of Labor*, 340 N.W.2d 185 (S.D.1983), services are employment, as contemplated under SDCL 61-1-11 *unless* the employer satisfies every subdivision of the statute. Here, the employer failed to establish that these nurses were not free from its control.