**Dale D. DAVIS, Appellant,**

v.

**Kenneth FRIZZELL, Virgil Schultz and Deborah Schultz, and Sturgis Transportation, Inc., a South Dakota Corporation, Appellees.**

**No. 18181.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1993.

Decided Aug. 4, 1993.

Lawrence R. Bihlmeyer, Rapid City, for appellant.

Jay C. Shultz, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for appellees.

WUEST, Justice.

Dale Davis (hereinafter Davis) appeals summary judgment granted to Kenneth Frizzell (hereinafter Frizzell). The trial court found Davis was an independent contractor not entitled to worker's compensation benefits and granted summary judgment to Frizzell. We reverse and remand for trial.

### FACTS

In September of 1989, Davis agreed to manage Frizzell's Black Hills Gold Auto Sales used car lot in Sturgis, South Dakota. There was no written employment agreement. Davis injured his back at the car lot in November, 1990, while bending over to hitch a trailer to a pickup truck. Black Hills Gold Auto Sales refused to pay the

medical bills, contending Davis was an independent contractor not entitled to worker's compensation rather than an employee of the company.

The employment agreement provided that Davis was free to buy and sell cars on his own behalf. Some of these cars were sold through Black Hills Auto Gold; the company did not receive a percentage of the profit from these sales but did receive a "lot pack fee." Davis did not wish to be involved in the financing and accounting side of the business so the company figured withholding for Davis' income taxes and social security. In 1989, Davis' W–2 form shows income withheld was reported through Black Hills Gold Auto Sales. In 1990, Davis' tax withholding was reported through Sturgis Transportation, another Frizzell company.

Based on affidavits filed by the parties, the trial court found that Davis was an independent contractor and granted summary judgment for Frizzell. From this decision, Davis appeals.

## ANALYSIS

### DID THE TRIAL COURT ERR IN HOLDING THERE WERE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER DAVIS WAS AN INDEPENDENT CONTRACTOR?

■ Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. SDCL 15–6–56(c). Our scope of review of summary judgment granted on the basis of independent contractor status involves mixed questions of law and fact which are fully reviewable by this court. *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D.1991); *Appeal of Hendrickson's Health Care Service*, 462 N.W.2d 655, 658 (S.D.1990); *Permann v. Department of Labor, Unemployment Ins. Div.*, 411 N.W.2d 113, 119 (S.D.1987). Under our standard of review, we must view the record most favorably to Davis, the nonmoving party. *First Western Bank v. Livestock Yards*, 444 N.W.2d 387, 389 (S.D.1989).

The determination of whether an individual is an employee, entitled to worker's compensation insurance, or an independent contractor not covered by SDCL Title 62 involves application of both statutes and legal precedent. The legislature has differentiated an employee from an independent contractor for purposes of worker's compensation. SDCL 62–1–3. This court has considered the distinction in a number of cases and determined each case must be determined on its own facts, with all the features of the relationship considered. *Egemo*, 470 N.W.2d at 820; *Dumire v. Martin*, 84 S.D. 572, 575, 174 N.W.2d 215, 216–17 (1970); *Steen v. Potts*, 75 S.D. 184, 186, 61 N.W.2d 825, 826 (1953).

■ Our most recent cases focus on two primary factors used to determine whether one is an employee or an independent contractor:

(1) Whether the individual has been and will continue to be free from control or direction over the performance of the services, both under contract of service and in fact; and

(2) Whether the individual is customarily engaged in an independently established trade, occupation, profession or business.

*Egemo*, 470 N.W.2d at 821; *Hendrickson's*, 462 N.W.2d at 655–59.

■ The right of control test includes consideration of the following factors:

(1) Direct evidence of the right of control;

(2) The method of payment;

(3) The furnishing of major items of equipment; and

(4) The right to terminate the employment relationship at will and without liability.

*Egemo*, 470 N.W.2d at 821 (citing *Sines v. Sines*, 110 Idaho 776, 718 P.2d 1214, 1215 (1986)); *Hendrickson's*, 462 N.W.2d at 659; *Dumire*, 84 S.D. at 575–76, 174 N.W.2d at 217.

The independently established trade, business or occupation analysis was clarified in *Hendrickson's* four part test:

(1) An enterprise independently established;

(2) An enterprise created and existing separate and apart from the relationship with the particular employer;

(3) An enterprise that will survive the termination of that relationship;

(4) An enterprise in which the individual possesses a proprietary interest to the extent that it can be operated without hindrance from any other individual.

*Hendrickson's*, 462 N.W.2d at 659. SDCL 61–1–11, which concerns unemployment insurance, provides additional assistance in determining whether an individual is an employee or an independent contractor. Viewing the evidence most favorably to Davis, we are of the opinion that there are substantial issues of material fact that require findings by the trial court.

Examining the first factor of the right of control test shows there is a dispute as to whether Davis' employment was at-will or for a specific term. Davis claims Frizzell wanted his commitment to work for at least one year but also wanted the option of terminating the position during the year if the used car business was not profitable. Frizzell asserts Davis insisted on a commitment of at least one year as manager to leave his previous job. Additionally, Frizzell claims Davis accepted the position by expressing an interest in eventually buying the business. Davis denies this was discussed at the onset of the relationship.

There is a dispute over the degree of control exercised by Frizzell. Davis asserts Frizzell controlled the hours the car lot was open, the hours he worked, the total amount of money spent on advertising and the amount of money spent to purchase used cars. Additionally, Davis claims Frizzell requested that he fire a particular sales agent, required cars from the lot be provided for visiting friends and business associates and insisted on a monthly inventory list of cars on the lot. Frizzell asserts he did not control the hours that Davis worked. He asserts Davis was free to hire agents, assign their hours and delegate tasks to them as he wished. Friz-

zell claims Davis was free to choose which auctions to attend and both the number and price of cars purchased.

There is also dispute over the method by which Davis was paid. Davis was paid solely on commission—50% on cars he sold individually plus 20% on cars sold by the other salesmen. Davis claims the agreement provided Frizzell would pay worker's compensation. Frizzell disputes this. Although income taxes and social security were withheld for commissions on the company cars Davis sold, for the cars he individually owned and sold there is a dispute as to whether taxes and social security were always withheld. There is also a question of whether the "lot pack fee" was paid to the company for all Davis' personally-owned cars sold through the business.

There are also questions of fact when the independent contractor test is analyzed. Frizzell claims Davis had already established an independent enterprise in selling used vehicles—that Davis' expertise in the area is the very reason he hired him. He claims Davis maintained a private rolodex list of customers and dealers in connection with his business. He asserts Davis' private purchasing and resale continued at the time he was managing the car lot—part of the dealing taking place independent of the company. He claims Davis' independent business existed before he managed the company and survived the termination of the relationship. He claims Davis has purchased and sold at least thirty automobiles since Black Hills Gold Auto Sales closed.

Davis maintains he did not have an independent business. He states he shared the information in his rolodex file whenever it was helpful to the company. He denies dealing in cars outside of Black Hills Gold Auto Sales during the relationship and asserts the agreement required he sell all his purchased cars through the lot.

There are genuine issues of material fact as to the degree of control exercised by Frizzell and Davis' establishment of an independent business. Because there are substantial factual questions, the trial

court erred in granting summary judgment. We reverse and remand for trial.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.