# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CC-01522-SCT

*EARTHGRAINS BAKERY GROUP, INC.*
*f/k/a SARA LEE BAKERY GROUP, INC.*

*v.*

*MISSISSIPPI DEPARTMENT OF*
*EMPLOYMENT SECURITY*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/2012 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | TIMOTHY W. LINDSAY KRISTI HASKINS JOHNSON |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE LEANNE FRANKLIN BRADY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 02/13/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., KING AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The Mississippi Department of Employment Security (MDES) determined that distributors for Sara Lee Bakery Group, Inc. (now Earthgrains Bakery Group, Inc.) were agent drivers and commission drivers for Sara Lee, rather than independent contractors, such that Sara Lee was required to pay unemployment insurance taxes for the distributors. The circuit court affirmed, and Sara Lee appealed. Finding that MDES failed to apply the law correctly and that its decision was not supported by substantial evidence, we reverse.

**Facts and Procedural History**

¶2. In 2006, Sara Lee restructured its distribution process in Mississippi from having employee distributors to independent contractor distributors. However, in January 2007, MDES determined that Sara Lee's independent contractor distributors actually were employees under Mississippi Code Section 71-5-11(J)(14) because they were "controlled and directed in the performance of their work."[1,2] MDES found the existence of an employer/employee relationship and required Sara Lee to pay unemployment insurance taxes for the distributors. Sara Lee appealed the decision. A telephonic hearing with an administrative law judge (ALJ) was held on October 26, 2007.

¶3. Sara Lee's first witness was Robert Fanelli, who worked for the consulting business that helped Sara Lee put the independent contractor distribution system in place. The transition was made in Mississippi in 2006, and by the time of the hearing, Sara Lee had restructured in fourteen states. Prior to 2004, Sara Lee had a fleet of trucks for distribution and employed all of its distributors nationwide. Sara Lee terminated its distributor employees, and the distributors were given the option to set up their own companies and

---

[1] The Employment Securities Law was amended effective July 1, 2007, and Section 71-5-11(I)(14) became Section 71-5-11(J)(14). The briefs refer to (J)(14), but there are references to (I)(14) throughout the record. The section numbers were changed again after a 2013 amendment, and the relevant section is again (I)(14). *See* Miss. Code Ann. § 71-5-11(I)(14) (Supp. 2013). However, consistent with the parties' briefs, we refer to (J)(14).

[2] Subsection (J)(14) defines employment as: "Services performed by an individual for wages shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that such individual has been and will continue to be free from control and direction over the performance of such services both under his contract of service and in fact; and the relationship of employer and employee shall be determined in accordance with the principles of the common law governing the relation of master and servant." Miss. Code Ann. § 71-5-11(J)(14) (Rev. 2011).

purchase distribution territories from Sara Lee; they would have the exclusive rights to distribute Sara Lee's products in the geographical area that they purchased. Sara Lee is the manufacturer, but it no longer has a distribution arm in the states that have converted to the independent contractor system; the territory owners are the distributors, operating their own independent distribution businesses.

¶4.    The territory owners are corporations, and Sara Lee has a contract with each distributor corporation, not with individuals. Fanelli explained that these are "setup to be truly independent distributor contractor relationships." He said the contract between Sara Lee and the distributor is meant to be clear that Sara Lee "does not retain any right to control the manner and means of performance" of the distributor, and the agreement specifies that the distributor is to "be an independent contractor for all purposes." Distributors are allowed to sell all or part of their territory to third parties. They are allowed to buy and distribute other products, except products that are direct competitors to Sara Lee. They can hire employees or agents to do any part of the business, such as drive trucks or negotiate prices. The territory owners are responsible for buying or leasing their own trucks, as opposed to Sara Lee providing trucks as it did for its employees under the old system.

¶5.    The distributors have the option of putting a Sara Lee logo on their trucks, and Sara Lee pays them a weekly advertising fee of $50 if they choose to do that. They can earn an additional $50 per week by purchasing and wearing shirts with Sara Lee's logo on them. The shirts have the words "Independent Operator" under the Sara Lee logo. Distributors are not required to do either of these things, and some choose not to. Sara Lee does not pay wages or salaries to the distributors, other than the weekly advertising fee if the distributors opt to

3

participate. The distributors' profits come from selling the products at a higher price than they paid Sara Lee for them. Distributors incur their own expenses in operating their businesses, including the cost of fuel, vehicle maintenance and insurance, office and administrative expenses, health insurance, and taxes.

¶6. Fanelli testified that Sara Lee does not provide instructions for how the distributors should operate their distribution businesses; Sara Lee does not have any control over hiring or firing the distributors' employees or the hours they work; Sara Lee does not provide office space; and the distributors do not submit reports to Sara Lee. Sara Lee does have a right to terminate its contract with a distributor for breach of contract (i.e., failure to deliver products). If the distributor wants to get out of the business, he has to sell the territory. Sara Lee has a right to reject a buyer in a few limited situations, such as if the buyer has had several convictions for driving under the influence or a history of criminal activity, and those terms are in the contract. Sara Lee also has a first right of refusal to buy the territory back at the distributor's asking price.

¶7. Sara Lee's second witness was John Shepard, Director of Alternative Distribution Systems for Sara Lee. Shepard explained how Sara Lee converted from an employee distribution system to an independent contractor distribution system by offering current distributors the opportunity to purchase territories. He corroborated Fanelli's testimony that the distributors are independent contractors, not Sara Lee employees. Shepard explained that the distributors resigned as Sara Lee employees, set up S-corporations, and now operate under their own names. Shepard said that the distributors must be S-corporations, and they cannot be individuals or sole proprietorships. Because the distributors operate their own

4

distribution companies, they are allowed to sell any products in or out of their territories except products that directly compete with Sara Lee. Shepard testified that the distributors do not receive wages or benefits from Sara Lee; the distributors can hire their own employees; Sara Lee does not have control over the hours the distributors work; Sara Lee does not provide training to the distributors; Sara Lee does not offer health insurance or truck insurance to the distributors; the distributors are responsible for their own taxes; and Sara Lee does not have any involvement with running the distributors' day-to-day businesses. He said the distributors are responsible for all aspects of their businesses, including assuming "all the risk associated with owning and operating that business."

¶8. Marlene Harper, Chief of Technical Services for MDES's tax department, testified for MDES. MDES asserted that an agreement is not proof of an independent contractor relationship and that Sara Lee could not "write themselves out from under Unemployment Insurance Law" by saying in their contract that they had an independent contractor relationship. MDES did not present any additional witnesses or evidence.

¶9. After the telephonic hearing, on November 21, 2007, MDES sent an Amended Decision to Sara Lee stating that, in addition to being employees under Mississippi Code Section 71-5-11(J)(14), MDES found that the distributors were "commission drivers" of Sara Lee under Section 71-5-11(J)(2). Sara Lee sent a letter to the ALJ stating its opposition to MDES being allowed to amend its decision *after* the telephonic hearing. Sara Lee maintained that both the original decision of January 31, 2007, and the amended decision of November 21, 2007, were incorrect, as the independent operator distributors did not satisfy the standards for "employment" under either subsection (J)(2) or (J)(14). Sara Lee asked for the November

5

amended decision to be dismissed, but in the alternative, it requested a hearing and an opportunity to brief the issue fully.

¶10. On December 13, 2007, the ALJ issued a decision in which he concluded that the independent operator distributors were not employees under Section 71-5-11(J)(14), nor were they "commissioned drivers" under Section 71-5-11(J)(2). However, the ALJ indicated that there was a question as to whether the distributors may be "agent drivers" under subsection (J)(2)(a). The ALJ continued the case on that issue and gave the parties two weeks to request that the matter be reconvened to submit additional evidence. Sara Lee requested that the telephonic hearing be reconvened with the limited purpose of presenting evidence on the agent-driver issue.

¶11. The second telephonic hearing was held on February 6, 2008, at which additional evidence was presented and several distributors were called as witnesses. John Shepard, Sara Lee's Director of Alternative Distribution Systems, testified again. In addition to affirming his earlier testimony, Shepard provided further explanation regarding the distributors' profit and their expenses. Shepard explained that the distributors' profits come from their "operating margin," which he said is easy to confuse with commission. Shepard was adamant that the distributors do not make commission, saying, "[T]here is no such thing as a commission on a sale. The margin is what [they] operate under based on their cost of goods and in turn what they sell the product to the customer at. That is their margin." He testified that the distributors incur expenses starting with the purchase of their route, which ranges from $35,000 to $100,000. The distributors also have to purchase or lease a delivery truck, purchase vehicle insurance, pay for fuel and maintenance of the truck, obtain health

6

insurance, and cover office and administrative expenses. Shepard said distributors can hire employees if they choose to, and Sara Lee has no control over or involvement in the selection of those employees or drivers hired to fill in. He said Sara Lee does not provide supervision or training and it does not monitor who is running the routes.

¶12. MDES called two distributors to testify during the second hearing, Devon Whitlock and Jeffery Lindley.[3] Whitlock was an employee distributor for Sara Lee prior to the conversion to independent operators in 2006. He purchased his territory from Sara Lee for $59,000. Whitlock testified that Sara Lee does not provide training; he does not submit reports to Sara Lee like he did as an employee; Sara Lee does not control how he runs his route; and he pays his own expenses, including fuel, truck maintenance, and insurance. Whitlock said that a group of drivers in his area got together and hired two relief drivers. He said Sara Lee did not approve the relief drivers; Sara Lee does not pay them; and he does not get permission from Sara Lee to use a relief driver. He testified that he was not able to negotiate prices with large chain stores, but that he could negotiate with smaller stores. He testified that he received eighteen to twenty-one percent "commission" from Sara Lee.

¶13. Lindley was a route salesman and then a route specialist for Sara Lee before becoming an independent operator distributor. He provided a thorough explanation of the distributors' responsibilities and relationship to Sara Lee. Lindley purchased his route from a distributor, not from Sara Lee, and he paid $51,000. Lindley said that distributors do not make "commission," as Whitlock had said. He explained that, previously, as a Sara Lee employee,

---

[3] Five distributors were available to testify, but the other three were not called, as the parties agreed that their testimony would be cumulative.

he had received a base salary plus seven percent commission; however, as an independent distributor he purchases product from Sara Lee at a discounted price and then sells it to customers at a wholesale price, and his profit comes from the difference between the discounted rate and the wholesale price. He said some people confuse that with "commission," but it is not commission. The discounted rate is between twelve and twenty-one percent, depending on the customer. Lindley testified that he makes more money as an independent contractor than he did as an employee, but he has to pay more expenses, such as taxes, fuel, and office supplies. Lindley testified that he is not closely supervised by Sara Lee; Sara Lee does not have a say in the hours he works or how he runs his route. He confirmed Fanelli's and Shepard's testimony that he operates a Subchapter S-Corporation and that he is not an agent of Sara Lee.

¶14.    The ALJ issued two decisions on March 26, 2008. First, consistent with his earlier opinion, he concluded that an employer/employee relationship did not exist under Section 71-5-11(J)(14). In that opinion, he explained that Sara Lee made "no direct payments to distributors . . . for the sale of its products," and because wages were not paid by Sara Lee, the issue of Sara Lee's control over the distributors need not even be addressed. He explained that the distributors' profit comes from "the difference between what they pay Sara Lee for the products and what they are able to sell the product[s] for to the retailers[,]" and he said that arrangement did "not even constitute a true commission."

¶15.    In his second opinion, addressing Section 71-5-11(J)(2)(a), the ALJ concluded that the distributors were "commissioned drivers" and "effectively agents of Sara Lee." Thus, he found that there was, in fact, an employer/employee relationship between Sara Lee and

8

its distributors under Section 71-5-11(J)(2)(a) and that Sara Lee was subject to Mississippi's unemployment insurance laws for the distributors. The second opinion contradicted the first, in which the ALJ had concluded that the distributors were *not paid commission* by Sara Lee. Sara Lee appealed the ALJ's decision regarding subsection (J)(2) to the MDES Board of Review.[4] In a two-page decision – with only one paragraph devoted to "findings of fact and opinion" – the Board of Review affirmed the ALJ's decision. Sara Lee appealed to the circuit court. On September 4, 2012, the circuit court judge entered a one-page order affirming the Board of Review's decision. Sara Lee filed a notice of appeal.

## Standard of Review

¶16.    A limited standard of review applies to appeals from administrative agencies, and an agency's decision will not be disturbed unless the decision (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope of authority granted to the agency, or (4) violates a constitutional right. *Sprouse v. Miss. Employment Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994). "A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." *Id.* The Mississippi Employment Security Law provides that the Court's review on appeal should be limited to questions of law, and the Board of Review's findings of fact "if supported by evidence and in the absence of fraud, shall be conclusive." Miss. Code Ann. § 71-5-531 (Rev. 2011). However, we have said that "employment security contribution assessments are an excise tax and, therefore, every doubt as to their application must be

---

[4] MDES cross-appealed the ALJ's decision on subsection (J)(14), and the Board of Review affirmed; MDES did not appeal to the circuit court.

resolved in favor of the taxpayer and against the taxing power." ***Miss. Employment Sec. Comm'n v. PDN, Inc.***, 586 So. 2d 838, 840 (Miss. 1991).

## Discussion

¶17.    The purpose of the Mississippi Employment Security Law is to compensate unemployed individuals.  Miss. Code Ann. § 71-5-1 (Rev. 2011).  Employers are required to set aside "unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."  Miss. Code Ann. § 71-5-3 (Rev. 2011).  The issue on appeal is whether Sara Lee's distributors are employees of Sara Lee – specifically, agent drivers or commission drivers under Mississippi Code Section 71-5-11(J)(2)(a) – for the purpose of receiving unemployment benefits.  Under Subsection (J)(2), "employment" is defined, in pertinent part, as follows:

> Services performed for remuneration for a principal:
>
> (a) As an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages (other than milk), or laundry or dry-cleaning services; . . . .
>
> However, for purposes of this subsection, the term "employment" shall include services described in subsection J(2)(a) and (b) of this section, only if:
>
> (i)    The contract of service contemplates that substantially all of the services are to be performed personally by such individual;
>
> (ii)   The individual does not have a substantial investment in facilities used in connection with the performance of the services (other than in facilities for transportation); and
>
> (iii)  The services are not in the nature of a single transaction that is not part of a continuing relationship with the person for whom the services are performed.

10

Miss. Code Ann. § 71-5-11(J)(2) (Rev. 2011). Neither party cited, and we have not found, any cases directly addressing subsection (J)(2)(a).

¶18.    Sara Lee asserts that the ALJ's decision that the independent operator distributors were agent drivers and commission drivers for Sara Lee was erroneous because the decision was arbitrary and capricious, not supported by the evidence, and contrary to law, because the ALJ failed to consider the factors in Section 71-5-11(J)(2)(i-iii). Sara Lee also asserts that the application of Mississippi Code Section 71-5-11(J)(2)(a) was unconstitutional.

> **Whether the ALJ's decision that the independent operator distributors were agent and commission drivers for Sara Lee was erroneous because the ALJ failed to correctly apply the law.**

¶19.    The ALJ concluded that the distributors were agent and commission drivers for Sara Lee under Mississippi Code Section 71-5-11(J)(2)(a), which provides that employment includes "services performed for remuneration for a principal . . . [a]s an agent-driver or commission-driver engaged in distributing . . . bakery products[.]" Miss. Code Ann. § 71-5-11(J)(2) (Rev. 2011).

### A. Services Performed for Remuneration

¶20.    For services to be considered "employment" under Section 71-5-11(J)(2), it must first be determined that the services were "performed for remuneration for a principal." *Id*. In the ALJ's opinion regarding Section 71-5-11(J)(14), he stated that "Sara Lee makes no direct payments to distributors . . . for the sale of its products," and that "MDES failed to establish wages were paid by Sara Lee to the distributors." However, in his second opinion – issued the same day – the ALJ removed that language and held that the distributors were "agent and commissioned drivers." He reasoned as follows:

11

Distributors receive remuneration from Sara Lee for their services in the forms of advertising money for wearing uniforms and having Sara Lee logos on their trucks, and in the form of weekly checks from Sara Lee. They make a profit from the difference between what they pay Sara Lee for the products and what they are able to sell the product[s] for to the smaller retailers within their territories, but they make most of their income from the sale of products to large retailers, with whom Sara Lee has negotiated the price, and further under this arrangement Sara Lee buys the credit vouchers from the distributor, and collects the payments from the retailers. The distributor does effectively sell the product to the retailer at a price, which the retailer pays Sara Lee for the product, and Sara Lee pays the distributor a percentage from the sale.

Sara Lee asserts that the ALJ's finding is contrary to law and not supported by the evidence.[5]

---

[5] With regard to the ALJ's statement that Sara Lee negotiates prices with large retailers and MDES's argument that Sara Lee has control over the distributors because it negotiates prices to which the distributors must adhere, we note the express terms of the distribution agreement:

> **SALES TO CHAINS:** In order to enable DISTRIBUTOR to pursue business opportunities with Chains, which may require standard price, delivery and other sales terms for all of its Outlets (both in and outside of the Sales Area), DISTRIBUTOR hereby designates COMPANY and COMPANY hereby agrees to act, as DISTRIBUTOR's agent for the specific purpose of negotiating such terms with Chains having Outlets in the Sales Area, and for no other purpose. . . This appointment of COMPANY as DISTRIBUTOR's agent shall not prevent DISTRIBUTOR from having the right to negotiate prices and terms directly with a Chain or selling Products to the Chain at whatever prices and terms DISTRIBUTOR can negotiate. In addition, DISTRIBUTOR shall have the right to revoke the designation of COMPANY as DISTRIBUTOR's agent at any time on thirty (30) days notice. . . .

This section clearly indicates that the distributors set up an agency agreement with Sara Lee to assist in negotiating prices, which the distributors may revoke at their option. Fanelli explained that the agreement included this provision because local managers of large chain stores often do not have the authority to negotiate prices. Instead, the distributor would have to travel to some far away city to negotiate prices at a central office. Thus, the distributors can elect to send Sara Lee to those locations to negotiate on their behalf. Should the distributor wish to negotiate with large chain stores on its own behalf, the agreement explicitly provides for that. Under the terms of this agreement, then, Sara Lee does not have control over the distributors – the agreement expressly contemplates that Sara Lee is the agent, which the distributor may terminate at any time, and the distributor is the principle.

¶21.　Although "remuneration" is not defined in the act, in other contexts involving the Employment Security Law, the Court has held that "remuneration for personal services" is equivalent to "wages," defining it as "consideration paid by an employer to an employee for services rendered by the employee to employer." *Miss. Employment Sec. Comm'n v. Jones*, 826 So. 2d 77, 81 (¶ 14) (Miss. 2002) (quoting *Miss. Employment Sec. Comm'n v. Medlin*, 252 Miss. 146, 171 So. 2d 496, 499 (1965)).　The *Medlin* Court went on to say that, under the terms of the Unemployment Compensation Act (now the Employment Security Law), "money earned by self-employed persons cannot in any way be considered as 'wages.'" *Medlin*, 171 So. 2d at 499.[6]　The distributors at issue are self-employed or, more accurately, employees of their own corporate entities.　The distribution agreements are between Sara Lee and the distribution companies, not with the individual distributors whom MDES would label employees of Sara Lee.　The profit made by the distribution companies does not originate with Sara Lee and cannot be considered "wages." *Medlin*, 171 So. 2d at 499.

¶22.　Sara Lee argues that the weekly advertising fee does not constitute remuneration from Sara Lee, as the ALJ found.　The distributors have an opportunity to earn an extra $100 per

---

[6] *See also* **Matter of Balhorn-Moyle Petroleum Co.**, 315 N.W.2d 481, 484 (S.D. 1982) ("although the agreement uses the term 'commission,' Hemenway's earnings, which flow from self-employment, cannot be wages"); **Holman Enter. Tobacco Warehouse v. Carter**, 536 S.W.2d 461, 462-63 (Ky. 1976) (citing **Medlin**, 171 So. 2d 496); **Micca v. Administrator, Unemployment Comp. Act**, 209 A.2d 682, 684 (Conn. 1965) ("it seems quite clear that a person seeking self-employment is not exposing himself to the labor market but has in fact withdrawn from it to become involved in his own enterprise.　In such a case, his earnings are not wages as defined by statute"). Although the cases cited here dealt with individuals who had left employment to pursue self-employment, then sought unemployment compensation, the definition of "wages" should be the same for all matters pertaining to unemployment compensation and the respective states' unemployment compensation acts.

week by putting a Sara Lee logo on their truck and by wearing a shirt with a Sara Lee logo. Notably, the shirts say "Independent Operator" under the Sara Lee logo. However, distributors are not required to do either of these things. We find that the option to enter into an advertising agreement, which is not required, for payment of a maximum of $100 per week is not sufficient to be considered remuneration for services performed. The service performed is distribution of products, not advertising. The $100 advertising fee is for a minor service[7] unrelated to the primary service of distribution,[8] and it does not constitute remuneration for distribution services.

¶23.    Sara Lee does not pay the distributors a commission, which would be a set percentage of Sara Lee's profit from the product sold by the distributor. *See Black's Law Dictionary* 272 (6th ed. 1990). The distributors purchase products from Sara Lee at a discounted price, then sell the products to customers at a wholesale price. The difference in the discounted price and the wholesale price is their "operating margin" or profit. One distributor, Whitlock, called the method of payment "commission," but he did not contradict the testimony from

---

[7] This is akin to the analysis applied under federal security law to corporate officers who perform only minor services for a corporation. Other jurisdictions have held that an officer of a corporation who "performs only minor services for the corporation is not an employee[.]" ***Idaho Ambucare Ctr., Inc. v. United States***, 57 F.3d 752, 755 (9th Cir. 1995) (discussing 26 U.S.C.A. § 3121(d)(1) and the corresponding Employment Tax Regulations found at 26 C.F.R. §§ 31.3121(d)-1(b), 31.3306(I)-1(e)). *See also* ***Nu-Look Design, Inc. v. C.I.R.***, 85 T.C.M. (CCH) 927 (T.C. 2003), *aff'd*, 356 F.3d 290 (3d Cir. 2004) (same); ***Western Mgmt., Inc. v. United States***, 45 Fed. Cl. 543, 549 (Fed. Cl. 2000) (same).

[8] Similarly, *see* ***Cent. Ill. Pub. Serv. Co. v. United States***, 435 U.S. 21, 23-24 (1978) (reimbursement for employees' lunch expenses did not qualify as "wages" subject to withholding because lunch payment was "unrelated to the employee's specific job title, the nature of his work, or his rate of pay").

14

Lindley and Shepard regarding the actual method of earning, which, as the ALJ correctly found the first time, was not in fact a commission.

¶24. For smaller stores, the distributor purchases products from Sara Lee at the discounted rate, sells the product to the customer at a wholesale price, and the customer pays the distributor directly; Sara Lee never sees the money. The distributor's profit, then, is the difference in what he paid Sara Lee and what he charged the customer. The distributor's profit is the same for larger stores, but the larger stores – usually chain retail stores with multiple locations – purchase the goods from the distributor in one of two ways: cash or a line of credit. The distributors then have the option to sell their accounts receivable – the lines of credit – to Sara Lee. When Sara Lee purchases an account receivable that exceeds what the distributor already owes Sara Lee for purchasing its products, Sara Lee writes the distributor a settlement check for the difference, which creates the distributor's profit. The profit the distributor receives, then, would be equal to the wholesale price the customer paid either in cash or through a line of credit – which Sara Lee may purchase so that the distributor does not have to collect from its accounts receivable – less the discounted price of the product. The larger chain stores often elect to pay by line of credit, so the accounts receivable that Sara Lee purchases frequently come from these larger stores.[9] Thus, Sara Lee

_____

[9] The fact that some customers elect to pay by line of credit rather than paying the distributors directly in cash does not render Sara Lee's purchase of those lines of credit a form of commission. In *Mississippi Employment Security Commission v. PDN, Inc.*, 586 So. 2d 838 (Miss. 1991), nurses placed by PDN, a medical placement service, were "paid by the service recipient or PDN, a matter determined solely by the agreement of the nurse and recipient." *Id.* at 842. The Court distinguished other cases in which "clients were contractually forbidden to pay the nurses directly" and "the workers were paid solely by the referral agency who billed and collected from the service recipient." *Id.* (citations omitted).

is not paying the distributors wages or commission, it is purchasing accounts receivable from them. Sara Lee does not pay the distributors any commission or wages, and therefore, the distributors cannot be considered to be remunerated for personal services.

¶25. Similarly, the portion of the Mississippi Administrative Code that pertains to the Mississippi Employment Security Law addresses newspaper and magazine distributors and provides that those distributors are not employees of the publisher for whom they distribute products:

> A newspaper distributor who owns his own truck, hires or discharges his or her own employees or helpers, distributes newspapers or magazines in his own territory, and keeps track of his or her own records as to sales and collections, with all sales to such distributor by the publisher and all magazines or newspapers returned within certain limited period being credited to the distributor, who receives no salary, wages or other remuneration from the publisher, no record being kept on where the distributor disposes of the magazines or newspapers which are taken by him or her, is not an employee of the publisher for the reason that the distributor's remuneration for his or her services or activities in distribution of magazines or newspapers is derived solely from the resale of magazines or newspapers to customers.

Miss. Admin. Code 20-1-101:603.07 (2012). The distributors at issue are much like the newspaper and magazine distributors described above. The distributors for Sara Lee own their own trucks, hire their own employees, distribute products in their territories, keep up with their own sales, and return outdated products to Sara Lee for a credit. They do not provide reports to Sara Lee, and they do not receive a salary or wages from Sara Lee. Thus, analogous to the newspaper and magazine distributors, the distributors for Sara Lee would not be employees of Sara Lee "for the reason that the distributor's remuneration for his or

---

Weighing the method of payment along with other factors, the Court concluded that an employer/employee relationship did not exist between PDN and the nurses. *Id.* at 842-43.

16

her services or activities in distribution of [Sara Lee products] is derived solely from the resale of [Sara Lee products] to customers." Miss. Admin. Code 20-1-101:603.07.

¶26.    We conclude that the distributors' income comes from the difference in the price they pay Sara Lee for products and the price the customers pay, less the distributors' business and operating expenses.  The method by which the distributors receive income does not constitute "remuneration of services" because the distributors are not being paid a salary, wages, or commission by Sara Lee.  Even if the arrangement did constitute remuneration for services, the distributors would be precluded from classification as "agent drivers" and "commission drivers" by the required factors in subsection (J)(2), as discussed below.

### B. Required Factors under Section 71-5-11(J)(2)

¶27.    Sara Lee argues that the ALJ's finding that the independent operator distributors are "agent drivers" and "commission drivers" under subsection (J)(2)(a) was erroneous because the ALJ failed to consider the factors in Section 71-5-11(J)(2)(i-iii).  Under that section, "employment" includes "[s]ervices performed for remuneration for a principal" by an "agent-driver or commission-driver engaged in distributing . . . bakery products" only if:

> (i) The contract of service contemplates that substantially all of the services are to be performed personally by such individual;

> (ii) The individual does not have a substantial investment in facilities used in connection with the performance of the services (other than in facilities for transportation); and

> (iii) The services are not in the nature of a single transaction that is not part of a continuing relationship with the person for whom the services are performed.

17

Miss. Code Ann. § 71-5-11(J)(2)(i-iii) (Rev. 2011). The absence of any one of these factors would preclude the applicability of the "employment" relationship described in subsection (J)(2)(a). The statute provides that "the term 'employment' shall include services described in subsection J(2)(a) . . . *only if* " the three listed factors are present. The inclusion of the word "and" after the second factor is evidence that all three factors must be present. Sara Lee asserts that the ALJ "completely ignored" these factors, therefore, the ALJ's analysis was incomplete and contrary to law. We agree that a discussion of the applicability of these factors is absent from the ALJ's opinion, thus, the ALJ failed to apply the law correctly.

¶28.    The first requirement for bringing a relationship under subsection (J)(2)(a) is that "[t]he contract of service contemplates that substantially all of the services are to be performed personally by such individual[.]" Miss. Code Ann. § 71-5-11(J)(2)(i) (Rev. 2011). Sara Lee argues that the distribution agreements between the distributors and Sara Lee "are not personal service contracts and do not contemplate that substantially all (or any) of the services are to be performed by an individual," therefore, subsection (i) cannot apply. Sara Lee states that the distribution agreements are between Sara Lee and distribution companies, not individuals. Further, Sara Lee maintains that the distribution companies have the authority to hire any employees they need or want to handle the actual distribution or any other services, and no one individual is required personally to fulfill the terms of the contract. We find these statements to be accurate based on the terms of the distribution agreement and the testimony from the hearings.

¶29.    The distribution agreement requires that the distributor be a "business entity." John Shepard testified that the distributors must be S-corporations, and they cannot be individuals

or sole proprietorships. The distribution agreement is executed on behalf of a company, not an individual, and the agreement does not require a certain individual to perform the work. The facts at hand do not satisfy the first requirement that "[t]he contract of service contemplates that substantially all of the services are to be performed personally by such individual." Miss. Code Ann. § 71-5-11(J)(2)(i) (Rev. 2011). Therefore, the independent operator distributors could not be classified as agent or commission drivers under Section 71-5-11(J)(2)(a). The absence of only one of the three required factors precludes classification of an employment relationship under Section 71-5-11(J)(2)(a), thus, the independent operator distributors could not be agent drivers or commission drivers under Section 71-5-11(J)(2)(a).

¶30. Again, we bear in mind the standard that any doubts as to the application of employment security contribution assessments "must be resolved in favor of the taxpayer and against the taxing power." *PDN*, 586 So. 2d at 840. We conclude that the ALJ erred in determining that the independent operator distributors were agent or commission drivers for Sara Lee, because his determination was not supported by the evidence, and he failed to apply the law correctly. The distributors do not receive remuneration for services from Sara Lee and they do not have personal service contracts with Sara Lee, so they do not satisfy the requirements for classification as employees under Section 71-5-11(J)(2). Because the forgoing issue is dispositive, we decline to address Sara Lee's alternative arguments that the ALJ's decision is arbitrary and capricious and that the application of Section 71-5-11(J)(2)(a) is unconstitutional.

**Conclusion**

19

¶31. The ALJ's decision that the independent operator distributors were agent and commissioned drivers for Sara Lee was erroneous because the ALJ failed to apply the law correctly and the decision was not supported by substantial evidence. The Board of Review and circuit court erred in affirming the ALJ. We reverse the circuit court's affirmance of the Board of Review and the ALJ, and we render judgment in favor of Sara Lee.

¶32. **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, AND PIERCE, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**