MILLER LIQUID FEEDS, Miller South Dakota, Petitioner and Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF LABOR, UNEMPLOYMENT INSURANCE DIVISION, Appellee.

No. 14012.

Supreme Court of South Dakota.

Submitted on Briefs April 21, 1983.

Decided Nov. 16, 1983.

R.R. Gerlach, Salem, for petitioner and appellant.

Drew C. Johnson, Sp. Asst. Atty. Gen., Aberdeen, for appellee.

PER CURIAM.

Miller Liquid Feeds (Company) appeals the circuit court affirmance of a final decision of the South Dakota Department of Labor holding that Company's salesmen are not independent contractors, but employees for whom employer contributions to the unemployment insurance fund are required. We affirm.

Company is a partnership which sells liquid feed, minerals, and other livestock products supplied by Talbot-Carlson, Inc. of South Dakota (TCI). Company's sales manager recruits individuals to sell the products on commission. The sales manager trains these individuals, developing their product knowledge and sales skills, and assists with actual sales. He has authority to discharge salesmen for flagrant personal misconduct which could affect Company's reputation.

Company assigns a territory to each salesman and provides a list of established customers within the territory. It does not

attempt to regulate the hours or work schedule of the salesmen, and it permits them to sell anything which does not directly compete with TCI products. Company does require salesmen to observe general company policies on products prices, customer discounts, deliveries, and service. Salesmen must also agree to attend all training sessions and meetings called by the TCI district manager.

TCI retains ownership of Company's inventory. Company distributes the products to its salesmen who assume responsibility for both loss and delinquent customer accounts. TCI invoices are used in making sales, and all checks are made payable to TCI. Only TCI literature and advertising are used for sales. Company handles all bookkeeping, sends payments to TCI, bills customers, and pays commissions. Company sometimes requires that salesmen not extend credit to specific customers.

Company requires salesmen to drive late-model pickup trucks bearing the TCI logo. If a salesman does not have and cannot purchase a suitable vehicle, Company routinely leases one for him and provides fuel and maintenance. Costs are advanced by Company with the understanding that reimbursement will come from future commissions. Company often requires that a salesman who uses a leased vehicle return it to Company premises when he is not using it to sell Company products.

Although salesmen are required to meet all expenses associated with selling TCI products, Company offers financial assistance at the onset of employment by allowing an initial monthly draw against future commissions. The draw is sufficient to cover all living expenses until income from commissions increases.

■ The issue is whether these salesmen are employees for which employer contributions to the state unemployment insurance fund are required. The parties agree that SDCL 61–1–11 is dispositive:

Services performed by an individual for wages shall be deemed to be employment subject to this title unless and until it is shown to the satisfaction of the department that:

(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

Although the statute specifically addresses services performed for wages, the term "wages" includes remuneration paid in the form of commissions. SDCL 61–1–1(9). Salesmen on commission will therefore qualify as employees under the unemployment insurance law unless they meet the so-called "ABC Test" by satisfying each of the three conjunctive subsections of SDCL 61–1–11. *Weber v. South Dakota Department of Labor, Unemployment Insurance Division,* 323 N.W.2d 117 (S.D.1982).

■ Our review of the facts convinces us that Company has failed to satisfy any of the tests:

### Test A

There are many instances of control of direction. For example, Company tells its salesmen how and where to sell, how much to charge, whether to extend credit, what forms to use, what type of vehicle to drive, and what products they may not sell.

### Test B

Sale of TCI products is not outside the usual course of Company business. It is the very act through which Company breathes existence. Company also permits salesmen to sell on its premises and with its telephones.

### Test C

At the time of the agency hearing, only two of four salesmen for Company were

selling anything but Company products. Additionally, the initial monthly draw to provide living expenses, though considerate on the part of Company, effectively discourages new salesmen from pursuing any independent trade, occupation, profession or business. It allows salesmen to sell Company products exclusively until income from commissions will support personal expenses.

This case is distinguishable from *South Dakota Department of Labor v. Tri State Insulation Co.,* 315 N.W.2d 315 (S.D.1982), where we held that certain salesmen were independent contractors and not employees. Those salesmen were unsupervised and were not required to report to the company. They were not assigned an established territory and were free to perform the same sales services simultaneously for competitors.

Company failed to surmount the three tests of SDCL 61–1–11. The decision of the circuit court is accordingly affirmed.