MIDLAND ATLAS COMPANY,
INC., Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF LA-
BOR, UNEMPLOYMENT INSURANCE
DIVISION, Appellee.

No. 18999.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1995.

Decided Sept. 27, 1995.

William E. Coester, Milbank, for appellant.

Drew C. Johnson, Agency Attorney, Aberdeen, for appellee.

MILLER, Chief Justice.

Midland Atlas Company, Inc. (Midland) appeals an order of the circuit court which affirmed the decision of the South Dakota Department of Labor that certain Midland sales representatives were employees rather than independent contractors for purposes of unemployment insurance tax liability. We reverse and remand.

## FACTS

Midland publishes and sells county atlases. Homer G. Taggart, III, filed a claim for unemployment insurance benefits with the Unemployment Insurance Division (Division) of the South Dakota Department of Labor. Taggart claimed to have been a sales representative for Midland. The Division concluded that Taggart, and others similarly situated, were employees of Midland rather than independent contractors. Consequently, the Division held Midland liable for unemployment insurance taxes for Taggart and other sales employees.

Midland appealed and a hearing was held before an administrative law judge (ALJ). The ALJ concluded that Taggart had never performed services for Midland and proceeded to address the general question of the employment status of sales representatives for Midland. The ALJ found in pertinent part:

[Midland] enters into a written contract with individuals to sell atlases. The written contract provides the following:

-Representatives set their own hours and sales method of approaching customers

-Representatives are paid on a straight commission basis

-Representatives provide their own vehicles and pay all expenses—[Midland] does not reimburse any expenses

-[Midland] pays no fringe benefits including vacations, insurance premiums or a profit sharing plan

-Representatives have discretion on how to collect land information for [Midland]

-[Midland] retains the right to inspect the work and approve the final product of collecting land atlas information and sales methods

-Representatives can hire assistants

-[Midland] reserves the right to terminate the contract upon thirty days written notice or for good cause to terminate the contract immediately

-Representatives retain the right to carry other lines of work concurrent with [Midland's] work

-Representatives agree not to compete against [Midland] in any competing atlas related business for a period of two years after termination of the contract

-Representatives must maintain sufficient auto insurance

. . . . .

Before a person receives his commission, he must send [Midland] his production report. Production reports can be sent to [Midland] at anytime.

[Midland] furnishes representatives with a receipt book, information sheets, a blue print map and a sample atlas.

The ALJ turned to the statutory standard for exempting independent contractors from the unemployment insurance program. This statute provides:

Service performed by an individual for wages is employment subject to this title unless and until it is shown to the satisfaction of the department of labor that:

(1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and

(2) The individual is customarily engaged in an independently established trade, occupation, profession or business.

SDCL 61–1–11. The ALJ concluded the first requirement was satisfied, *i.e.*, Midland does not control or direct the performance of sales representatives. As for the second element, the ALJ ruled that those individuals who had independently established businesses outside of their sales work for Midland were independent contractors, exempt from the unem-

ployment insurance program. The ALJ identified three individuals who had separate, established businesses:

One of [Midland's] former representatives, Steve Graves, does similar work for another business in Iowa. He performs this service as an independent contractor, has had his own business name since 1990 and also sells other products in addition to selling atlases.

One of [Midland's] current sales representatives, Art Arndt, is a professional sales person. In addition to selling atlases on behalf of [Midland] he owns Sonny's Lakeside Printing, and also performs services for Wilson Sign Company. He has a Minnesota sales tax license. He does not have a South Dakota sales tax license.

\* \* \* \* \* \*

Bob Brown sells atlases for [Midland] and usually decides what counties the sales representatives will work next. Ninety percent of Brown's services are done outside of South Dakota. From 1977 to about 1979 Brown not only sold atlases, but he also sold real estate, grain bins and equipment. Sometime in 1991 or mid-1992 Brown let his sales tax license lapse. Currently, Brown farms on a part-time basis.

In contrast, the ALJ ruled that those individuals, namely Maynard Pearson and Bob Caron, who had no other independently established business outside of their sales work for Midland, were employees within the meaning of the unemployment insurance program. As to these employees, the ALJ found:

Maynard Pearson currently sells atlases on behalf of [Midland]. When Pearson first worked for [Midland] in about 1983 he sold other companies' products. [Midland] did not object to Pearson doing this. Pearson also worked as an independent contractor for another business that published and produced atlases. Presently, Pearson does not sell any other products. Pearson's commission checks are made out to Buffalo Sales which is a corporation started by Pearson and his son. Bob Caron \*, another sales representative, sells atlases for

[Midland]. He has had a continuous working relationship with [Midland] since 1989.

Midland appealed the ALJ's decision. The trial court ruled the ALJ was incorrect in holding that individuals who have no independently established business cannot be independent contractors. The trial court remanded the case to the ALJ for reconsideration in light of the South Dakota Supreme Court's decision in *South Dakota Dep't of Labor, Unemployment Ins. Div. v. Tri State Insulation*, 315 N.W.2d 315 (S.D.1982). In *Tri State*, this Court held that salespeople for an insulation company were independent contractors and therefore exempt from the unemployment insurance program. *Id.* at 317–18.

After considering the *Tri State* case, the ALJ noted that the alleged employer in *Tri State* did not assign salespeople to particular territories or restrict their ability to sell for competing companies. In contrast, Midland specifically prohibits salespeople from selling competitors' atlases during their sales relationship with Midland and for two years following any termination. Midland also assigns salespeople to certain territories. The ALJ reasoned that the Midland salespeople were more analogous to the sales employees in *Miller Liquid Feeds v. S.D. Dep't of Labor, Unemployment Ins. Div.*, 340 N.W.2d 185 (S.D.1983). Like Midland, the employer in *Miller* prohibited salespeople from selling competing products and assigned them to particular sales regions. Concluding that the Midland salespeople who worked only for Midland were not holding themselves in readiness to perform services in that business for others, the ALJ amended her original conclusions of law to read, "[Midland] has not established that the other individuals [Pearson and Caron] who perform services for [Midland] are customarily engaged in an independently established trade, occupation, profession or business." Consequently, the ALJ again ruled that Maynard Person and Bob Caron were employees rather than inde-

---

\* The ALJ mistakenly listed Bob Caron as Bob Kroon. We have corrected this typographical error.

pendent contractors for purposes of unemployment insurance.

The circuit court affirmed the ALJ's decision. Midland appeals.

## DECISION

Midland does not challenge the ALJ's factual findings. Midland disputes the ALJ's conclusion that certain sales representatives are employees rather than independent contractors, because they are not "customarily engaged in an independently established trade, occupation, profession or business."

 The ultimate determination of whether an individual is an employee or an independent contractor is a mixed question of law and fact fully reviewable by this Court. *Egemo v. Flores,* 470 N.W.2d 817, 820 (S.D. 1991). We give no deference to the decision of the administrative agency or the trial court. *In re Hendrickson's Health Care Service,* 462 N.W.2d 655, 656 (S.D.1990) (citations omitted).

 Because Midland does not dispute that sales representatives perform services for Midland for wages, the burden is on Midland to prove these individuals are independent contractors under both elements of SDCL 61–1–1. *Hendrickson's Health Care,* 462 N.W.2d at 658 (citing *Carr v. S.D. Dep't of Labor, Unemployment Ins. Div.,* 355 N.W.2d 10 (S.D.1984); *Weber v. S.D. Dep't. of Labor, Unemployment Ins. Div.,* 323 N.W.2d 117, 120–21 (S.D.1982)). The ALJ and trial court concluded that Midland satisfied the first element, because it did not exercise control or direction over the performance of the salespeople. None of the parties challenge this ruling on appeal.

 The second element requires a showing by Midland that sales representatives are "customarily engaged in an independently established trade, occupation, profession or business." SDCL 61–1–11. In justifying her conclusion that Caron and Pearson fail the "independently established trade" requirement, the ALJ noted that Midland assigns salespeople to certain territories and prohibits them from selling for other atlas companies during their time with Midland and for two years afterward. Yet, these

facts are present for *all* salespeople at Midland, including those whom the ALJ designated as independent contractors. Furthermore, assigned territories and industry non-compete clauses are more relevant to the element of control than to the requirement of an independent calling.

In addition, while these assignments and restrictions reveal much about the nature of the atlas business, they reveal very little about the employment status of the sales representatives. As for assigned sales territories, Midland's decision to focus sales efforts on certain geographical areas, when it is publishing an atlas of those same areas, reflects common sense rather than managerial control. Likewise, because Midland's business revolves around drafting and publishing atlases, it has a genuine interest in insuring that its updated atlases are not copied and sold by others. The industry non-compete clause is more likely a means of protecting itself from copyright infringement than a means of denying competitors the selling skills of its current or former sales representatives.

 Finally, when one considers the factors which are relevant to the second element of the independent contractor test, it is clear that all Midland salespeople are "customarily engaged in an independently established trade, occupation, profession or business." We have written:

The requirement that the employee's occupation be independently established and that [she] be customarily engaged in it calls for an enterprise created and existing separate and apart from the relationship with the particular employer; an enterprise that will survive the termination of that relationship. The individual must have a proprietary interest in the enterprise to the extent that she can operate it without hinderance from any other individual.

... However, it is not skill alone which determines whether an individual is established in a trade or business, but whether that individual by reason of such skill engages herself in an economic enterprise such that she bears the risk of her own

unemployment. Whether or not she is unemployed is solely a function of market forces and the demand for her skills, not the response of her master to similar economic realities.

462 N.W.2d at 659 (citations omitted).

Here, four of the five sales representatives hold themselves out as engaged in an independent enterprise which would exist separate and apart from Midland. Steve Graves sells other products besides atlases and has his own business name. Art Arndt owns a printing company and performs sales services for a sign company. For two years, Bob Brown sold real estate, grain bins, and equipment in addition to Midland atlases, and he now farms on a part-time basis. Even Maynard Pearson, who was deemed an employee by the ALJ, started his own corporation with his son, and Midland makes out Pearson's commission checks to this corporation. Further, when Pearson first began working for Midland, he sold products for other companies. According to his own testimony, Midland had nothing to do with his decision to stop selling for others.

Additionally, the fact that the remaining sales representative, Caron, chooses to sell exclusively for Midland does not mean he has no independently established trade. In *Tri State*, we considered the employment status of individuals engaged in selling insulation, awnings, windows and sidings for Tri State, a South Dakota company. 315 N.W.2d at 316. Our observations in that case are directly applicable to the issue presented here:

[These salespeople] may not have all of the accouterments one usually associates with those engaged in an independent business, trade, occupation, profession or business— but then, they need little more than an automobile and a ballpoint pen to carry on what for them is as tangible a trade as that, say, of a self-employed contract welder or automobile repairman. That they may be temporarily unemployed if not selling products for Tri State, one of its competitors, or any other distributor of products, is not determinative of the issue.

. . . . .

... Were they not selling Tri State's products surely they would be engaged in selling those of someone else. [Though] their proprietary interest in their occupation may not be manifested visibly to the same degree of that of the barber, the baker, the plumber, the doctor, the lawyer or the man with an independent calling ... they do have a proprietary interest in their skills—in the ability to persuade someone to purchase a product that he might otherwise not have.

*Id.* at 317–18.

Like the individuals in *Tri State*, all sales representatives for Midland have a proprietary interest in their ability to persuade others to buy. Whether they choose to expand their sales or business endeavors beyond their work for Midland is entirely an independent decision which they make, unfettered by Midland's managerial or economic influence. The breadth of their business enterprises is a function of the market and their own initiative, rather than any economic decisions or demands by Midland. *See Hendrickson's Health Care*, 462 N.W.2d at 659. By engaging in an independent economic enterprise, they assume the risk of their own unemployment. Consequently, we conclude that all sales representatives for Midland satisfy the independent contractor requirements of SDCL 61–1–11.

Reversed and remanded.

AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I respectfully dissent. The majority incorrectly concludes that Pearson and Caron were independent contractors. In *Miller Liquid Feeds v. S.D. Dept. of Labor*, we stated:

This case is distinguishable from *South Dakota Department of Labor v. Tri State Insulation Co.*, 315 N.W.2d 315 (S.D.1982), where we held that certain salesmen were independent contractors and not employees. Those salesmen were unsupervised and were not required to report to the company. They were not assigned an es-

tablished territory and were free to perform the same sales services simultaneously for competitors.

*Miller Liquid Feeds v. S.D. Dept. of Labor,* 340 N.W.2d 185, 187 (S.D.1983) (emphasis added). Here, Pearson and Caron were assigned to "an established territory." *Id.* They were not "free to perform the same sales services simultaneously for competitors." *Id.* In fact, they signed a non-compete agreement prohibiting them from selling competitors' products during the time they were Midland salesmen and for two years after termination.

The majority's opinion is contrary to SDCL 61–1–11(2) and established precedent. The majority in effect overrules *Miller,* 340 N.W.2d 185. The majority's reliance on *Tri State Insulation,* 315 N.W.2d 315 (S.D.1982), is misplaced. The salesmen in *Tri State Insulation* were "free to perform simultaneously the same sales services for other companies, including Tri State's competitors." *Tri State Insulation* 315 N.W.2d at 316. Pearson and Caron could not sell for Midland's competitors because of the non-compete agreement. SDCL 61–1–11(2) provides in part: "The individual [an independent contractor] is *customarily engaged in an independently established* trade, occupation, profession or business." (Emphasis added).

This court has adopted a test for the "independently established trade, business, or occupation:

1. [a]n enterprise independently established;

2. [a]n enterprise created and existing separate and apart from the relationship with the particular employer;

3. [a]n enterprise that will survive the termination of that relationship; and,

4. [a]n enterprise in which the individual possess a proprietary interest to the extent that it can be operated without hinderance [sic] from any other individual."

*Davis v. Frizzell,* 504 N.W.2d 330, 331–32 (S.D.1993) (citing *Appeal of Hendrickson's Health Care Service,* 462 N.W.2d 655, 659 (S.D.1990)). Pearson and Caron are prohibited from selling atlases for any other company for two years after termination. The job

with Midland is their only employment, so they are not engaged in an "independently established" trade. *See Hendrickson's,* 462 N.W.2d at 659. Midland required the two-year non-compete agreement so that Pearson and Caron could not be what the majority claims they are: independent contractors. Pearson and Caron were "employees" entitled to unemployment benefits.

In my view, the majority is simply rewriting SDCL 61–1–11 which distinguishes Employee from Independent Contractor as follows:

> Service performed by an individual for wages is employment subject to this title unless and until it is shown to the satisfaction of the department of labor that:
>
> (1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and
>
> (2) The individual is customarily engaged in an independently established trade, occupation, profession or business.

The findings of fact and conclusions of law clearly establish that these individuals are not "customarily engaged in an independently established trade, occupation or business."

We should affirm the administrative law judge and the circuit court judge that these two persons were employees under SDCL 61–1–11 and not independent contractors. *Hendrickson,* 462 N.W.2d at 659.