#24343-a-BJORKMAN, Circuit Judge
**2007 SD 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TAK COMMUNICATIONS,                    Appellant,

    v.

SOUTH DAKOTA UNEMPLOYMENT
INSURANCE DIVISION,                    Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, Jr.
Judge

\* \* \* \*

CRAIG A. PFEIFLE of
Lynn, Jackson, Shultz & Lebrun
Rapid City, South Dakota

A. STEVENSON BOGUE of
McGrath, North, Mullin & Kratz
Omaha, Nebraska                    Attorneys for appellant.

SHANNON GEORGE-LARSON
South Dakota Department of Labor
Pierre, South Dakota

ROBERT B. ANDERSON of
May, Adam, Gerdes & Thompson
Pierre, South Dakota                    Attorneys for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 22, 2007

OPINION FILED 7/11/07

#24343

BJORKMAN, Circuit Judge

[¶1.]        TAK Communications (TAK) appeals from the circuit court's judgment affirming the Administrative Law Judge's (ALJ) decision that Diana Dillman (Dillman) and others similarly situated were employees of TAK, rendering TAK liable for contributions to the unemployment compensation fund based on their wages.  We affirm.

FACTS

[¶2.]        TAK is a South Dakota corporation which contracts with cable companies across the United States to perform their sales campaigns.  In South Dakota TAK's only client is Midcontinent Communications (Midco).  Dillman began working for TAK in June 2004 after signing an Independent Contractor Agreement (Agreement) which TAK drafted.  Prior to her work with TAK, Dillman, educated through the tenth grade, had always acted as an employee of others, never having owned or operated her own business.  She came to TAK with no prior sales experience.

[¶3.]        The Agreement, which Dillman contended she did not fully comprehend, provided that Dillman "is not and will not be considered an employee of TAK Communications, Inc. and that the relationship between [sic] and [Dillman] is on [sic] of principal-independent contractor rater [sic] than employer-employee."  In the Agreement, Dillman represented that as contractor she was "properly organized and validly existing under the laws of the State of South Dakota.  Attached as Exhibit A is a copy of Contract's [sic] certificate of organization or registration."  Despite this language, no Exhibit A was attached to the Agreement,

Dillman established no such organization, and she executed the Agreement solely in her own name.

[¶4.] According to the Agreement, Dillman was to supply her own materials, provide her own insurance, set her own hours, and bear the risk of not earning any commission due to lack of sales. TAK provided Dillman with forms and sales materials to allow her to sell Midco products. It also provided her with a shirt and identification tag with Midco's name on them, although Dillman was not required to wear either item. Dillman's training consisted of accompanying other sales personnel to learn how to sell the product and she was provided guidance from a TAK representative on sales techniques. She was responsible for her own transportation, was to purchase her own peddler's license for each municipality in which she sold, and was provided with "turf sheets" indicating areas in which to market the products.

[¶5.] While TAK allows its sales associates to operate other businesses independent of their relationship with TAK, and some of its sales associates did so, Dillman was not among them. Dillman had never obtained a sales tax license, either before, during, or after the time she sold for TAK. Apart from her relationship with TAK, Dillman had no sales experience prior to, during, or after the conclusion of her relationship with TAK. During the time Dillman sold for TAK she never used a business name, did not advertise the sale of other products, and had no separate business premises. Dillman had no peddler's license before TAK's representative, Pam Boyden, ordered her to stop selling until she obtained one. When Dillman paid the fee and obtained the required license, it listed TAK

Communications above Dillman's name and contained TAK's address rather than Dillman's.

[¶6.] In 2005 Dillman ceased selling for TAK. After her relationship with TAK ended, she eventually returned to work full time as an employee for another business. Following an investigation, the South Dakota Unemployment Insurance Division (Division) issued a determination notice concluding that Dillman was TAK's employee, and that services she and others similarly situated provided to TAK were subject to the unemployment insurance laws. TAK appealed Division's determination. The ALJ concluded that Dillman was free from TAK's control in the performance of her service, however, she was not customarily engaged in an independently established trade, occupation, profession, or business, thus rendering her, and others similarly situated, TAK employees under SDCL 61-1-11. TAK appealed the ALJ's decision to the circuit court.

[¶7.] The circuit court affirmed both of the ALJ's determinations. TAK then appealed to this Court. Division did not file a notice of review as to the ALJ's conclusion that Dillman was free from TAK's control, leaving us with the sole issue of whether the circuit court erred in affirming the ALJ's decision that Dillman was not customarily engaged in an independently established trade, occupation, profession, or business as provided in SDCL 61-1-11(2).

STANDARD OF REVIEW

[¶8.] Agency findings are subject to the same standard of review as circuit court findings. This Court must decide, in light of all the evidence, whether the findings are clearly erroneous. "If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we

reverse." Streeter v. Canton School Dist., 2004 SD 30, ¶14, 677 NW2d 221, 225. Whether an individual is an employee or an independent contractor raises a mixed question of law and fact; as such, it is fully reviewable by this Court." Egemo v. Flores, 470 NW2d 817, 820 (SD 1991) (citing Appeal of Hendrickson's Health Care Service, 462 NW2d 655, 658 (SD 1990)). We give no deference to the decision of either the ALJ or the circuit court. Midland Atlas Co., Inc. v. South Dakota Dep't of Labor, 538 NW2d 232, 235 (SD 1995).

## DECISION

[¶9.] Resolution of this appeal is controlled by SDCL 61-1-11. That statute provides:

> Service performed by an individual for wages is employment subject to this title unless and until it is shown to the satisfaction of the Department of Labor that:
>
> (1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and
>
> (2) The individual is customarily engaged in an independently established trade, occupation, profession, or business.

SDCL 61-1-11. The burden initially lies with Division to prove that Dillman provided services to TAK for wages. *Midland Atlas Co. Inc.,* 538 NW2d at 235. Wages are defined by SDCL 61-1-1(17) as: "all remuneration paid for services, including commissions and bonuses."

[¶10.] TAK acknowledges that it paid Dillman wages in the form of commissions. Thus, the burden shifts to TAK to prove that Dillman met both elements of SDCL 61-1-11. *Midland Atlas Co. Inc,* 538 NW2d at 235.

Because Division does not seek review of the determination that Dillman

was free from TAK's control over the performance of her work, the question of

Dillman's status turns on whether at the time in question she was

"customarily engaged in an independently established trade, occupation,

profession, or business" pursuant to SDCL 61-1-11(2).

[¶11.]    We have previously defined the terms employed in this

provision:

> The adverb 'independently' clearly modifies the word
> 'established', and must carry the meaning that the trade,
> occupation, profession or business was established,
> independently of the employer or the rendering of the
> personal service forming the basis of the claim.  The
> present tense 'is' indicates the individual must be engaged
> in such independent activity at the time of rendering the
> service involved.  'Customarily' means usually, habitually,
> regularly.  The language used contemplates that one
> engaged in an independently established trade,
> occupation, profession or business has a proprietary
> interest therein to the extent that he can operate it
> without hindrance from any individual whatsoever.  An
> established business is one that is permanent, fixed,
> stable and lasting.

South Dakota Dep't of Labor v. Tri State Insulation Co., 315 NW2d 315, 316 (SD

1982) (citing Vermont Securities v. Vermont Unemployment Comp. Comm'n, 104

A2d 915, 917 (Vt 1954) (internal citations omitted)).

[¶12.]    We have addressed this issue in a variety of contexts, including

several actions involving salespersons.  *See, e.g.*, Moonlight Rose Co. v. South

Dakota Unemployment Ins. Div., 2003 SD 96, 668 NW2d 304  (affirming

circuit court's determination that rose salespersons were employees rather

than independent contractors); Lake Preston Housing Corp. v. South Dakota

Dep't of Labor, 1999 SD 5, 587 NW2d 736 (affirming circuit court's

determination that a property manager was an employee rather than an independent contractor); Unemployment Liability of Shoppers Guide v. South Dakota Dep't of Labor, Unemployment Ins. Div., 1996 SD 92, 551 NW2d 584 (reversing circuit court's determination that newspaper carriers were employees rather than independent contractors); *Midland Atlas Co., Inc.* 538 NW2d at 236 (reversing circuit court's determination that Atlas sales representatives were employees rather than independent contractors); *Appeal of Hendrickson's Health Care Serv.*, 462 NW2d at 655 (affirming circuit court's determination that nurses and nurse's aides who provided in-home health care to business clients were employees); Miller Liquid Feeds v. South Dakota Dep't of Labor, Unemployment Ins. Div., 340 NW2d 185 (SD 1983)(affirming circuit court's determination that a corporation's salesmen were employees rather than independent contractors); *Tri State Insulation Co.*, 315 NW2d at 319 (affirming circuit court's determination that salesmen were independent contractors rather than employees).

[¶13.]	Our holdings in these cases demonstrate that: "In determining whether an individual is an employee or an independent contractor, each case must be determined on its own facts and all the features of the relationship are to be considered." *Egemo,* 470 NW2d at 820. In *Moonlight Rose Co.,* we set forth a four prong test to determine whether a relationship fits within the meaning of SDCL 61-1-11(2). Under that test, TAK must show that Dillman:

> (1)	was engaged in an enterprise that was created and exists apart from her relationship with TAK and that the enterprise would survive the termination of that relationship;

> (2)     has a proprietary interest in the enterprise
>           to the extent that she can operate without
>           hindrance from any other individual;
>
> (3)     due to her skill, is engaged in an economic
>           enterprise such that she bears the risk of
>           unemployment; and
>
> (4)     remains employed as a function of market
>           forces and the demand for her skills, rather
>           than the response of an employer to similar
>           economic realities.
>
> All four prongs of this test . . . require that the individual
> have some relationship with an economic enterprise that
> is independent of the relationship with the company that
> is allegedly subject to unemployment insurance taxation.

*Moonlight Rose Company*, 2003 SD 96, ¶17, 668 NW2d at 310. Under the facts of this case, Dillman was not customarily engaged in an enterprise independent of the relationship with TAK, thus rendering her employment subject to this title. Because we conclude that TAK has failed to meet the first prong of the test, we need not address the others.

[¶14.]     The ALJ's findings, which TAK does not dispute, indicate Dillman had never been considered an independent contractor, nor had she owned or operated her own business outside of her relationship with TAK. Dillman never obtained a sales tax license. Outside of her relationship with TAK, Dillman had no sales experience prior to, during, or after the conclusion of her relationship with TAK. The record also indicates that during the time Dillman sold for TAK she never used a business name, did not advertise for the sale of other products and had no separate business premises. Dillman also had no peddler's license until TAK's representative ordered her to stop selling until she obtained one. Even then, the

license contained TAK's name above Dillman's own, and TAK's address rather than Dillman's.

[¶15.]     The facts of this case most closely resemble those in *Appeal of Hendrickson's Health Care Serv.; Lake Preston Housing Corp.;* and *Moonlight Rose Co.* In each case, none of the salespersons held themselves out as proprietors of an independent business by having a sales tax license, business cards, a separate business premises or phone listing. In each of those cases, no evidence existed indicating that the salespersons sold products independently of the relationship in question. Additionally, in *Moonlight Rose Co.*, each peddler's license similarly listed Moonlight Rose Company. 2003 SD 96, ¶20, 668 NW2d at 311. Lacking sales tax and peddler's licenses in her own name, Dillman could not lawfully engage in sales for others as an independent contractor.

[¶16.]     TAK directs us to our decisions in *Tri State Insulation Co.* and *Midland Atlas Co. Inc.*, both cases involving salespersons, to support its position. It points to our language in *Tri State Insulation Co.* that those in sales need "little more than an automobile and a ballpoint pen" to operate as independent contractors. 315 NW2d at 317. While true, the statement provides paltry aid in resolving whether Dillman was customarily engaged in an enterprise independent of her relationship with TAK. Unlike *Tri State Insulation Co.*, where we concluded that were the salesmen not "selling Tri State's products surely they would be engaged in selling those of someone else," the facts here indicate the contrary - that Dillman had never - either before, during or after her relationship with TAK - similarly engaged herself, nor established a business entity through which to do so. *Id.* at 318. In *Midland Atlas Co., Inc.,* we reviewed the status of five sales

representatives. 538 NW2d at 235. Four held themselves out as engaged in an enterprise independent of Midland. *Id.* at 236. The fifth did not sell for other companies. *Id.* There we noted that the fact the remaining sales representative chose to sell only for Midland did not, in itself, mean he had no independently established trade. *Id.* Our holding in *Midland Atlas Co., Inc.,* did not, as TAK suggests, prohibit the agency from concluding that some of its salespeople are employees and others independent contractors. Our decision there merely reflected our conclusion that the ALJ mistakenly applied facts concerning the issue of control to the issue of independent calling.

[¶17.]    In each case where wages are paid, the test is whether both elements of SDCL 61-1-11 are met. Under the second element of the statute, the issue is not whether TAK's salespersons generally were free under the terms of the agreement to sell for others, but whether the individual in question actually was "customarily engaged in an independently established trade, occupation or business." Under these facts, TAK simply did not meet its burden to establish that Dillman and others similarly situated were so engaged.

[¶18.]    The decision of the trial court is affirmed.

[¶19.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶20.]    BJORKMAN, Circuit Judge, for SABERS, Justice, disqualified.