#30432-aff in pt & rev in pt-SRJ
**2025 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BLACK HILLS ADVENTURE
LODGING, LLC,                                            Appellant,

v.

SOUTH DAKOTA DEPARTMENT OF
LABOR AND REGULATION;
REEMPLOYMENT ASSISTANCE
DIVISION,                                                Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ERIC J. STRAWN
Judge

* * * *

LISA K. CAGLE of
Gunderson, Palmer, Nelson
    & Ashmore, LLP
Rapid City, South Dakota                    Attorneys for appellant.


GERALD M. MCCABE
Special Assistant Attorney General
Aberdeen, South Dakota                      Attorneys for appellee.

* * * *

CONSIDERED ON BRIEFS
MARCH 19, 2024
OPINION FILED **02/12/25**

JENSEN, Chief Justice

[¶1.] Black Hills Adventure Lodging (BHAL) manages rental cabins throughout the Black Hills. BHAL hired Stephanie Hammer to provide cleaning services for cabins it managed. After Hammer's relationship with BHAL ended, she applied for reemployment assistance benefits with the South Dakota Department of Labor and Regulation (Department). BHAL disputed Hammer's claim, asserting that Hammer was an independent contractor, not an employee. Following contested administrative proceedings, the administrative law judge (ALJ) determined Hammer was an employee of BHAL and ordered BHAL to pay into the unemployment compensation fund based on the wages paid to Hammer and others similarly situated to her. The circuit court affirmed the administrative decision and BHAL appealed. We affirm in part and reverse in part, with instructions to the circuit court to vacate the portion of the Department's determination that BHAL is liable for the wages paid to "others similarly situated."

## Factual and Procedural Background

[¶2.] BHAL manages rentals cabins for various owners. Its management responsibilities include scheduling reservations, setting and collecting rental payments, and ensuring that each property is properly maintained throughout the year. BHAL also arranges for cabins to be cleaned between reservations.

[¶3.] BHAL relies predominantly on word of mouth and professional connections to hire cleaners. BHAL informs each cleaner that they are "contract labor" and are financially responsible for their own transportation and cleaning supplies. Cleaners do not receive any benefits such as insurance or paid time off

from BHAL. The cleaning rate for each cabin is established by BHAL, however cleaners may sometimes negotiate for higher rates if they do not believe that they can clean the cabins for the price set by BHAL. Their wages are reported to the Internal Revenue Service using a 1099-MISC form, classifying their income as "miscellaneous income."

[¶4.] Cleaners hired by BHAL do not have set working hours nor are they prohibited from providing cleaning services to other entities. BHAL does not train any of the cleaners, nor does it provide the cleaners with a list of requirements that must be accomplished at each cabin. When a cabin needs to be cleaned, BHAL sends an inquiry text to a cleaner and provides them with the previous reservation's check-out date and time as well as the date and time that the next reservation begins. Cleaners are free to accept or decline any cleaning opportunity they are offered and can clean the cabin at any time before the next reservation begins. After a cleaner has completed their services, BHAL routinely enters the cabins to inspect the cleaner's work. Once a cleaning is complete, neither party is contractually obligated to perform or offer future cleaning opportunities.

[¶5.] Hammer began cleaning for BHAL in July 2019. She learned of BHAL's cleaning needs through two women who also cleaned cabins for BHAL. Prior to cleaning for BHAL, Hammer held several jobs, including housekeeping for motels and other cleaning services as an employee. Hammer received a 1099-MISC document from BHAL and was generally informed of her responsibilities after she accepted a cleaning opportunity. Hammer was able to decline any job she could not complete and maintained control over when and how the cabins were cleaned,

provided they were finished before the next reservation. Once Hammer accepted a job, she was expected to personally clean the cabin that she was assigned. Hammer was paid once a month for the cabins she cleaned during the month. BHAL did not restrict Hammer's ability to perform work for other businesses. Hammer was expected to provide her own transportation between cabins.

[¶6.] Before Hammer began cleaning for BHAL, her prior experience as a cleaner had always been as an employee. During the time she cleaned for BHAL, Hammer did not provide cleaning services to any other entities. In addition to providing services exclusively for BHAL, Hammer never held herself out as an independent cleaning business nor did she obtain a sales tax license or establish a formal business entity. Additionally, Hammer did not advertise her cleaning services and exclusively relied upon BHAL for cleaning work.

[¶7.] In September 2019, BHAL declined to offer Hammer future cleaning opportunities. Thereafter, Hammer filed for reemployment assistance benefits with the Department. In response to Hammer's filing, the Department requested BHAL and Hammer to fill out a "Worker Relationship Questionnaire" to aid in determining Hammer's status as an employee or independent contractor pursuant to SDCL 61-1-11.

[¶8.] Hammer's questionnaire confirmed that she drove her personal vehicle to each job site and billed BHAL once a month for her services. She further indicated that BHAL did not furnish her with transportation, an expense account, or an office facility. BHAL stocked each cabin with basic supplies such as toilet paper, laundry detergent, and dish soap; however, many of the cleaning materials

were provided by Hammer at her own expense.[1]  Hammer also provided her own mop, broom, and vacuum cleaner, and incurred roughly $400 in costs associated with cleaning cabins for BHAL.  She was not reimbursed for these expenses.

[¶9.]     With respect to her job responsibilities, Hammer stated that she was not given any instructions on how her work was to be performed nor did she receive any special training.  Hammer represented that she did not have a set work schedule and was able to complete her cleaning at any time prior to the next guest's arrival.  Hammer specified that she did not receive any insurance benefits from BHAL nor was she eligible to receive paid leave.  She also stated that her relationship with BHAL could be terminated by either party, at any time, without incurring liability.

[¶10.]     The questionnaire also asked whether Hammer performed similar services for others.  Hammer checked the "unknown" box and did not provide any further explanation of the work she performed outside of BHAL.  She also indicated that she did not know what it meant when she was asked if she incurred any business expenses while performing work for BHAL.  Hammer further answered that she performed services for BHAL under her own name rather than under a business name.  The questionnaire also asked Hammer if she "represent[ed] [her]self to the public as being in business to perform the same or similar services" to which she responded with "unknown".  Hammer then indicated that she did not have a financial investment in an independently established business related to the

---

1.     The ALJ found that BHAL "provided cleaning supplies to Stephanie Hammer," but Hammer acknowledged that she bought most of the products she used for cleaning without reimbursement.

services she performed for BHAL, nor could she incur a loss beyond wages in the performance of her services for BHAL. BHAL's questionnaire responses were consistent with Hammer's questionnaire answers.

[¶11.] After reviewing the questionnaires, the Department determined that Hammer and others similarly situated to her were employees under SDCL 61-1-11. Consequently, BHAL was required to create a reemployment assistance tax account and provide a list of payments made to Hammer and others similarly situated to her during 2018, 2019, and 2020. BHAL appealed the Department's determination.

[¶12.] A hearing was held before the ALJ on August 11, 2021. At the conclusion of the hearing, the ALJ entered findings of fact and conclusions of law affirming the Department's determination that Hammer and those similarly situated to her, were employees of BHAL for reemployment assistance purposes. The ALJ also held BHAL "liable for contributions to the unemployment compensation fund based on the wages paid to Stephanie Hammer and others similarly situated, and any penalties or interest on those contributions." BHAL timely appealed the ALJ's decision to the circuit court. The circuit court affirmed the ALJ's findings of fact and conclusions of law. BHAL appeals and raises the following issues:

> 1. Whether the circuit court erred when it determined that Hammer was an employee of BHAL under SDCL 61-1-11, and thereby requiring BHAL to contribute to the unemployment compensation fund.

> 2. Whether the circuit court erred when it affirmed the ALJ's determination that others similarly situated to Hammer were employees of BHAL under SDCL 61-1-11.

## Standard of Review

[¶13.] In accordance with SDCL 1-26-36, this Court must "give great weight to the findings and inferences made by the Department on factual questions." *Sopko v. C & R Transfer Co., Inc.*, 1998 S.D. 8, ¶ 6, 575 N.W.2d 225, 228 (citing *Helms v. Lynn's, Inc.*, 1996 S.D. 8, ¶¶ 9–10, 542 N.W.2d 764, 766). "We examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *Id.* (citing *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413, 415 (S.D. 1986)). "If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse." *Id.* (citation omitted). Questions of law remain fully reviewable by this Court. *Id.* (citation omitted). "The determination of employee or independent contractor status, for purposes of unemployment insurance, is a mixed question of law and fact. It is fully reviewable by this Court." *Moonlight Rose Co. v. S.D. Unemployment Ins. Div.*, 2003 S.D. 96, ¶ 5, 668 N.W.2d 304, 307 (citing *Egemo v. Flores*, 470 N.W.2d 817, 820 (S.D. 1991)).

## Analysis

### *Hammer as an employee or independent contractor.*

[¶14.] For the purposes of reemployment assistance, SDCL 61-1-11 provides:

> Service performed by an individual for wages is employment subject to [Title 61] unless and until it is shown . . . that:
>
> (1) The individual has been and will continue to be free from control or direction over the performance of the service, both under his contract of service and in fact; and
>
> (2) The individual is customarily engaged in an independently established trade, occupation, profession, or business.

[¶15.]        Under the statute, "the Department [] has the [initial] burden to show that the alleged employees provide services for wages[,]" which is undisputed here. *Moonlight Rose Co.*, 2003 S.D. 96, ¶ 16, 668 N.W.2d at 309 (citation omitted).[2] As such, SDCL 61-1-11 creates a presumption that the services provided in exchange for wages is employment unless BHAL can satisfy both prongs of the statute. *Id.* (citation omitted). "All elements of this test must be shown before the exemption applies." *Appeal of Hendrickson's Health Care*, 462 N.W.2d 655, 658 (S.D. 1990) (citation omitted).

[¶16.]        The first prong of SDCL 61-1-11 is known as the "right of control test." *Egemo*, 470 N.W.2d at 821. "The right of control test includes consideration of the following factors: (1) Direct evidence of the right of control; (2) The method of payment; (3) The furnishing of major items of equipment; and (4) The right to terminate the employment relationship at will and without liability." *Davis v. Frizzell*, 504 N.W.2d 330, 331 (S.D. 1993) (citing *Egemo*, 470 N.W.2d at 821).

[¶17.]        BHAL asserts that the ALJ erred when it determined "Hammer . . . was not free from control or direction in the performance of her services for [BHAL]." In support, BHAL notes that Hammer was free to accept or decline any cleaning opportunity she was offered, and she was able to perform cleaning services for other entities without restriction. BHAL argues that it "(1) did not control the hours or days that Hammer worked; (2) did not exert[] control over the method or

---

2.        SDCL 61-1-1(17) defines wages broadly as "all remuneration paid for services, including commissions and bonuses" with only a handful of specific exceptions, none of which are implicated here.

manner that Hammer completed her tasks; and (3) only required that the cleaning was done in compliance with the contracts between BHAL and its customers." BHAL also notes that Hammer acknowledged her status as an independent contractor; received a 1099-MISC tax form to reflect the monthly payments she received for her services; was not reimbursed for any expenses she incurred; and was personally responsible for ensuring that she had sufficient supplies and cleaning tools to complete each cabin.

[¶18.] On the other hand, the Department argues that BHAL possessed control over the performance of Hammer's services as evidenced by the fact that BHAL required each cabin to be cleaned within a specific timeframe along with its authority to oversee and inspect all of Hammer's work. Additionally, the Department argues that BHAL made cleaning supplies available to Hammer at each cabin and that Hammer's decision to use her own supplies was based on preference or convenience, not necessity.

[¶19.] Our review of the ALJ's findings of fact and undisputed evidence show that BHAL did not exercise control over the performance of Hammer's cleaning duties under SDCL 61-1-11(1). The ALJ found that "Hammer had the option of accepting or declining available work" and BHAL did not "provide an office" or set "an established work schedule[]" for Hammer. BHAL never provided training to Hammer, and although her work was subject to inspection and correction of any deficiencies, there is no evidence to suggest that Hammer was ever supervised or required to return to correct any deficiencies in her cleaning. The minimal control BHAL maintained over Hammer's performance was consistent with the freedom

necessary to satisfy the first prong of SDCL 61-1-11. *See Egemo*, 470 N.W.2d at 821 (stating that where an entity does not control the hours or specific performance of a job, "a mere general finding that the employer exercises control over the project by coordinating the duties necessary for its completion does not establish control dispositive of an employer/employee relationship.").

[¶20.] As to the method of payment, the ALJ found that BHAL paid Hammer monthly after she submitted an invoice "listing the cabin[s] clean[ed], the date of service, and the rate for that cabin." While the cleaning rate for each cabin was initially set by BHAL, Hammer could attempt to negotiate a higher rate. Hammer's earnings were reported on a 1099-MISC and she was not subject to W-2 withholding. Although not dispositive, these facts are further "indicative of an independent contractor/contractee relationship." *Id.*; *see also Dumire v. Martin*, 84 S.D. 572, 174 N.W.2d 215, 217 (1970).

[¶21.] The ALJ found that despite cleaning supplies being available at each cabin, Hammer chose to provide most of her own supplies. The ALJ also found that Hammer provided her own cleaning tools, such as a "mop, broom, and vacuum cleaner[,]" and that she was not reimbursed for any of these expenses. The ALJ further found that "Hammer drove her personal vehicle to cabins" and BHAL "did not reimburse Hammer for her travel to and from the rental cabins." In *Egemo*, we stated that "the number of tools a worker provides is irrelevant; the significance is found in the fact the [alleged employee] was required to supply all of his own tools . . . and also provided his own maintenance and his transportation to the remote work sites." 470 N.W.2d at 822. Much like *Egemo*, BHAL's absence of control is

demonstrated by Hammer having to provide all of her own tools for cleaning and transportation to each job site without reimbursement.

[¶22.] The fourth inquiry under the right of control test is whether the parties have "the right to terminate the employment relationship at will and without liability." *Id.* When the parties "ha[ve] agreed to a specific price for the overall undertaking, having a duration for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach[,]" such evidence is contrary to the control that exists in a typical employment relationship. 41 Am. Jur. 2d *Independent Contractors* § 23 (2024). BHAL and Hammer contracted for the particular purpose to clean a cabin and identified the specific time frame by which the cleaning must be accomplished. Furthermore, each solicitation by BHAL set forth a specific price for Hammer's services. While neither party was obligated to continue to contract with the other, once Hammer agreed to clean a cabin, she was personally obligated to perform the work in return for the agreed upon cleaning rate.

[¶23.] A review of the ALJ's findings and the evidence offered at the administrative hearing show that Hammer was free from BHAL's control under SDCL 61-1-11(1). The Department and circuit court's determination to the contrary was error.

[¶24.] Although BHAL did not exercise the type of control that typically exists in an employment relationship, for reemployment tax purposes, BHAL was also required to show that "[Hammer was] customarily engaged in an independently

established trade, occupation, profession, or business." SDCL 61-1-11(2). When applying SDCL 61-1-11(2), we have inquired into whether the putative employee:

(1)     was engaged in an enterprise that was created and exists apart from [their] relationship with [the alleged employer] and that the enterprise would survive the termination of that relationship;

(2)     has a proprietary interest in the enterprise to the extent that [they] can operate without hindrance from any other individual;

(3)     due to [their] skill, is engaged in an economic enterprise such that [they] bear[] the risk of unemployment; and

(4)     remains employed as a function of market forces and the demand for [their] skills, rather than the response of an employer to similar economic realities.

*TAK Commc'ns v. South Dakota Unemployment Ins. Div.*, 2007 S.D. 68, ¶ 13, 736 N.W.2d 840, 843 (quoting *Moonlight Rose Co.*, 2003 S.D. 96, ¶ 17, 668 N.W.2d at 310).

[¶25.]     We have recognized that all four factors used to assess whether SDCL 61-1-11(2) has been met "either explicitly or implicitly, require that the individual have some relationship with an economic enterprise that is independent of the relationship with the company that is allegedly subject to unemployment insurance taxation." *Moonlight Rose Co.*, 2003 S.D. 96, ¶ 17, 668 N.W.2d at 310. However, "[i]n determining whether an individual is an employee or an independent contractor, each case must be determined on its own facts and all the features of the

relationship are to be considered." *TAK Commc'ns*, 2007 S.D. 68, ¶ 13, 736 N.W.2d at 843 (quoting *Egemo*, 470 N.W.2d at 820).[3]

[¶26.] Other courts applying nearly identical statutory language to SDCL 61-1-11 also consider a list of non-exhaustive factors to determine whether an individual is customarily engaged in an independently established trade, and recognize that such a determination "necessitates a fact-intensive inquiry." *A Special Touch v. Dep't of Lab. & Indus.*, 228 A.3d 489, 505 (Pa. 2020); *see also Sw. Appraisal Grp., LLC v. Adm'r, Unemployment Comp. Act*, 155 A.3d 738, 749 (Conn. 2017); *Indus. Claim Appeals Off. v. Softrock Geological Servs., Inc.*, 325 P.3d 560, 562 (Colo. 2014); *Bloomington Area Arts Council v. Dep't of Workforce Dev.*, 821 N.E.2d 843, 853 (Ind. Ct. App. 2005). In doing so, courts have acknowledged the need to consider the "totality of the circumstances" and "evaluate[] the [unique]

---

3. Our decisions have not rigorously applied these factors when considering whether an individual is customarily engaged in an independently established trade, nor have we recognized them to be exhaustive, as our decisions have often considered a variety of other factors and circumstances when analyzing SDCL 61-1-11(2). *See Moonlight Rose Co.*, 2003 S.D. 96, ¶ 21, 668 N.W.2d at 311–12 (considering factors such as the entity's liability for unsold flowers; a prohibition against the individuals competing with the business; and that the entity provided the necessary equipment for selling flowers to determine the individuals did not have an independently established trade); *Hendrickson's Health*, 462 N.W.2d 659 (listing several factors outside of those included in the four-part "independently established trade test"); *South Dakota Dep't of Lab. v. Tri State Insulation Co.*, 315 N.W.2d 315, 318–19 (S.D. 1982) (considering the lack of control by the putative employer over the salesmen and the salesmen's proprietary interest by using skills to persuade someone to purchase products.) While *TAK Communications* properly recognized the importance of considering all the circumstances of a particular relationship, the decision strayed from our prior application of these considerations as factors and treated each prong of the test as an element. *See* 2007 S.D. 68, ¶ 13, 736 N.W.2d at 844 ("Because we conclude that TAK has failed to meet the first prong of the test, we need not address the others.").

dynamics of the relationship between the putative employee and the employer; there is no dispositive single factor or set of factors." *Sw. Appraisal Grp.*, 155 A.3d at 749 (citation omitted).

[¶27.] Although our consideration of SDCL 61-1-11(2) is properly guided by these factors and the unique circumstances of each relationship, our determination must ultimately be consistent with the language of the statute. "When interpreting a statute, we begin with the plain language and structure of the statute." *Farm Bureau Life Ins. Co. v. Dolly*, 2018 S.D. 28, ¶ 9, 910 N.W.2d 196, 199–200 (quoting *Magellan Pipeline Co., LP v. South Dakota Dep't of Revenue & Reg.*, 2013 S.D. 68, ¶ 9, 837 N.W.2d 402, 404). "When the language in a statute is clear, certain[,] and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (quoting *Rowley v. South Dakota Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 7, 826 N.W.2d 360, 363–64).

[¶28.] The critical phrases in SDCL 61-1-11(2) are "customarily engaged" and "independently established." "Black's Law Dictionary defines the word 'customarily' to mean 'usually, habitually, according to the customs; general practice or usual order of things; regularly.'" *A Special Touch*, 228 A.3d at 503 (quoting Black's Law Dictionary 385 (6th ed. 1990)). Whereas "engage" means "[t]o employ or involve one's self; to take part in; to embark on." *Engage,* Black's Law Dictionary (11th ed. 2019). Additionally, "independent" is defined as "[n]ot subject to the control or influence of another; not associated with another entity; not dependent or contingent on something else." *Independent*, Black's Law Dictionary (11th ed. 2019). Lastly, "established" is defined as "[h]aving existed for a long period; already

in long-term use." *Established*, Black's Law Dictionary (11th ed. 2019). Thus, a proper interpretation of SDCL 61-1-11(2) requires a showing that the putative employee is providing services as part of an independently established venture that is not subject to the control of, nor dependent upon the relationship with the putative employer.

[¶29.] In grappling with SDCL 61-1-11(2), we have not previously addressed whether a putative employee's freedom to provide services to other entities necessarily creates an independent contractor/contractee relationship or conversely, whether a putative employee's decision to not provide similar services to third parties necessarily creates an employee/employer relationship. In the Department's view, the absence of any evidence that Hammer provided services to others necessarily demonstrates that she is not an independent contractor. In contrast, BHAL suggests that Hammer's mere freedom to provide cleaning services to others is sufficient to create an independent contractor relationship under the second prong of the statute.

[¶30.] Like other courts, we do not believe either view is supported by the language of the statute. Solely relying on the fact that an individual is "capable of performing their services for others [to determine that they are an independent contractor] would be to ignore the plain language of the statute and render the 'customarily engaged' requirement meaningless." *A Special Touch*, 228 A.3d at 504; *see also Sw. Appraisal Grp.*, 155 A.3d at 749 ("[T]he mere freedom to provide services for third parties is not by itself dispositive[.]"). In a similar vein, the fact that an individual has not "actually provided services for someone other than the

employer is [not] dispositive proof of an employer-employee relationship." *Sw. Appraisal Grp.*, 155 A.3d at 749 (alteration in original). "[A]n individual can be an independent contractor who 'is simply satisfied working for a single client or at a single location' depending on the circumstances." *A Special Touch*, 228 A.3d at 504 (citation omitted); *see also Indus. Claim Appeals Off.*, 325 P.3d at 565 (rejecting the notion that the absence of any showing that an individual provided services to a third party is dispositive proof of an employer/employee relationship).

[¶31.]     Thus, while the consideration of whether the putative employee provides services to others is relevant, "the 'customarily engaged' language can encompass more activity than actually providing services for others, so long as it is demonstrated that the individual is in some way actually involved in an independently established trade or business." *A Special Touch*, 228 A.3d at 504. Furthermore, evidence of the employee providing "services to third parties, or lack thereof, becomes more significant in proving independent contractor status in the context of cases lacking other indicia of a putative employee's independent enterprise." *Sw. Appraisal Grp.*, 155 A.3d at 842. Thus, "whether an individual is customarily engaged in an independent business is a question that can only be resolved by applying a totality of the circumstances[.]" *Indus. Claim Appeals Off.*, 325 P.3d at 565.

[¶32.]     While Hammer was free to provide cleaning services for third parties, there is no evidence that Hammer performed work for others or that she was ever engaged in a trade or business independent from BHAL. Based upon the payment arrangement, Hammer had some propriety or economic interest in cleaning as

many cabins as efficiently as possible, but she was wholly dependent upon BHAL for work and there is no evidence she was able to transition her cleaning services to others once BHAL ended the relationship.

[¶33.]     Additionally, Hammer never provided cleaning services as an independent contractor to others, either before or during the time she cleaned for BHAL.  As we explained in *Lake Preston Housing Corp. v. South Dakota Department of Labor*, the requirement that a putative employee be customarily engaged in an independent occupation "calls for an enterprise created and existing separate and apart from the relationship with the particular employer, an enterprise that will survive the termination of that relationship, and an enterprise in which the individual must have a proprietary interest to the extent that she can operate it without hindrance from any other individual."  1999 S.D. 5, ¶ 9, 587 N.W.2d 736, 738–39 (citation omitted).

[¶34.]     The facts show that Hammer relied on BHAL to earn an income and did not engage in an economic enterprise such that she bore the risk of unemployment.  In *Hendrickson's Health*, we considered the fact that the alleged employees did not attempt to hold themselves out or advertise their services as an independent business venture, along with the absence of a separate place of business to conclude that they "were not assuming the risk of unemployment by engaging in an economic enterprise independent of [their employer]."  462 N.W.2d at 659.  Instead, "[t]hey were employed [by the employer] and dependent upon it for their livelihood."  *Id.*  Under the facts currently before us, it is clear that Hammer made no effort to establish a business independent of BHAL, either before or during

the time she worked for BHAL. The work she performed and the wages she earned were completely dependent upon BHAL. Without any facts indicating otherwise, it cannot be said that she bore the risk of unemployment.

[¶35.] BHAL has failed to meet its burden established by SDCL 61-1-11(2) to show that Hammer was customarily engaged in an independently established trade. Because it has failed to meet its burden, the circuit court did not err in concluding that Hammer was an employee of BHAL for reemployment assistances tax purposes. As such, BHAL is liable for contributions to the unemployment compensation fund for all wages paid to Hammer, and any penalties or interest on those contributions.

### Others similarly situated to Hammer as employees or independent contractors.

[¶36.] In addition to ordering BHAL to contribute towards the unemployment compensation fund for wages it paid to Hammer, the circuit court also affirmed the ALJ's decision to hold BHAL liable for reemployment contributions for all wages earned by "others similarly situated" to Hammer. BHAL asserts that this was a legal error because SDCL 61-1-11 requires the Department to "first identify those who have been paid wages." It argues that by holding BHAL responsible for "others similarly situated" to Hammer, the Department eliminated the burden shifting safeguard found in SDCL 61-1-11. BHAL also argues that the decision deprives it of procedural due process. In support, it asserts that SDCL 61-1-11 requires the Department to identify individuals who have received wages for services before an organization is required to prove there is not an employer/employee relationship.

From BHAL's perspective, the court's order sidesteps this requirement and allows the Department to avoid its statutory burden identified in SDCL 61-1-11.

[¶37.]    In response, the Department argues it satisfied its burden to prove Hammer received wages for her services pursuant to SDCL 61-1-11.  Upon satisfying this burden with respect to Hammer, the Department argues that "[a]ny similarly situated individual would also necessarily have been paid wages or they would not be fairly considered 'similarly situated.'"  Furthermore, the Department argues that BHAL has not been deprived of its procedural due process rights because it was afforded the entirety of the administrative appeals process.  The Department also asserts that BHAL did not present any evidence indicating that certain individuals were not employees of BHAL.

[¶38.]    As already identified, the conclusion under SDCL 61-1-11 is dependent upon the unique relationship between each individual and their putative employer. Because of this, we have stated that when "[d]etermining whether an individual is an employee or an independent contractor, each case *must be determined on its own facts* and all the features of the relationship are to be considered."  *Egemo*, 470 N.W.2d at 820 (emphasis added).  Permitting the Department to hold BHAL liable for "others similarly situated" to Hammer would run directly counter to the individualized analysis that must be made to determine whether an individual is an employee of a putative employer.

## Conclusion

[¶39.]    We affirm the circuit court's judgment affirming the Department's determination that Hammer was an employee of BHAL under Title 61, and that

BHAL was responsible to contribute towards the unemployment compensation fund for the wages it paid Hammer. We reverse the circuit court's judgment affirming the Department's decision that BHAL is liable for reemployment assistance taxes on wages paid to "others similarly situated" to Hammer and we remand for the circuit court to enter an order directing the Department to vacate that portion of its decision.

[¶40.]    KERN, SALTER, DEVANEY, and MYREN, Justices, concur.